[No. F015104. Fifth Dist. Mar. 29, 1993.]

JOHN LUCAS, a Minor, etc., et al., Plaintiffs and Appellants, v.
FRESNO UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

## COUNSEL

Stammer, McKnight, Barnum & Bailey, Craig M. Mortensen and A. John Witkowski for Plaintiffs and Appellants.

Eldridge, Anderson & Weakley, James D. Weakley and Larry H. Shapazian for Defendant and Respondent.

## OPINION

**BEST, P. J.**—This is an appeal by plaintiffs, John Lucas and his mother, Vicki L. Lucas, from a judgment entered in favor of defendant Fresno Unified School District (District) following the grant of District's motion for summary judgment. The question presented is whether the doctrine of implied assumption of risk bars plaintiffs from holding District liable for the negligent failure to supervise John and other pupils while on school grounds, which negligence proximately caused John to be struck in the eye with a dirt clod.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 18, 1987, John Lucas (John), aged 10 years, was a student at Vinland Elementary School in Fresno. During the 10 a.m. morning recess, John saw other students throwing dirt clods at one another and joined in the activity. He saw approximately 100 clods thrown before he joined in. He threw two dirt clods aimed at other students who were approximately twenty-five feet away, before any clods were thrown at him. After throwing the clods, John took refuge behind a "kickboard." Before sticking his head out he heard about eight clods hit the "kickboard." After several minutes, John stuck his head out and was hit in the eye. Before being hit, John heard another student say to him and the others to stop throwing dirt clods before someone got hit. Before this incident, John had been told by his mother not to throw rocks and he knew he was not supposed to do so.

Suit for damages was filed against District and several of the students who were engaged in throwing the dirt clods. District filed a motion for summary judgment contending plaintiffs were barred from recovery by the doctrine of implied assumption of risk. The trial court granted the motion for summary judgment and entered judgment in favor of District.

### DISCUSSION

■ There being no real dispute regarding the material facts, the question of whether the doctrine of implied assumption of risk bars plaintiffs' recovery becomes one of law. For the answer we look to two recent decisions of the California Supreme Court, *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] and *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724], involving the application of the assumption-of-risk doctrine in light of the court's adoption of comparative fault principles of liability in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. Review was granted by the Supreme

Court in *Knight* and *Ford* to resolve the conflict that existed among the Courts of Appeal. (3 Cal.4th at p. 300.) Rather than resolving the conflict, these recent decisions have served only to further stir up the already murky waters. Although in both cases the Supreme Court affirmed summary judgments in favor of the defendant by holding that recovery was barred by plaintiff's assumption of the risk of injury, "No single view has garnered a majority." (*Ford* v. *Gouin, supra*, 3 Cal.4th at p. 351, conc. opn. of Kennard, J.) As Justice Kennard notes, "Three Justices embrace the primary/secondary approach to implied assumption of risk, three justices adhere to the traditional consent approach, and one justice would openly abolish the doctrine." (*Id.*, fn 1.) Neither decision is on all fours with the instant case in that Knight and Jewett were coparticipants in an informal touch football game while Ford was a water-skier and the defendant Gouin was the operator of the boat towing Ford.

Pursuant to an order of this court, the parties filed supplemental briefs addressing those decisions. Not surprisingly, they disagree as to the effect of the decisions on this appeal.

In *Knight*, Justice George's lead opinion, joined by Chief Justice Lucas and Justice Arabian, adopted a "duty analysis" utilizing "primary assumption of risk/secondary assumption of risk" terminology, as follows:

"First, in 'primary assumption of risk' cases—where the defendant owes no duty to protect the plaintiff from a particular risk of harm—a plaintiff who has suffered such harm is not entitled to recover from the defendant, whether the plaintiff's conduct in undertaking the activity was reasonable *or unreasonable*. Second, in 'secondary assumption of risk' cases—involving instances in which the defendant has breached the duty of care owed to the plaintiff—the defendant is not entitled to be entirely relieved of liability for an injury proximately caused by such breach, simply because the plaintiff's conduct in encountering the risk of such an injury was *reasonable* rather than unreasonable. Third and finally, the question whether the defendant owed a legal duty to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport." (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 309, original italics.)

"In cases involving 'primary assumption of risk'—where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury—the doctrine continues to operate as a complete bar to

the plaintiff's recovery. In cases involving 'secondary assumption of risk'—where the defendant does owe a duty of care to the plaintiff, but the plaintiff proceeds to encounter a known risk imposed by the defendant's breach of duty—the doctrine is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties." (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 314-315.)

In his concurring and dissenting opinion, Justice Mosk agrees that, in this context, a defendant's liability should be determined under a duty analysis, but believes the doctrine of implied assumption of risk should be eliminated entirely and comparative fault principles applied to determine liability. (3 Cal.4th at pp. 321-322, conc. and dis. opn. of Mosk, J.)

In a concurring and dissenting opinion joined in by Justice Baxter, Justice Panelli would affirm the summary judgment in favor of defendant by adopting and applying a "consent-based" analysis—did plaintiff sustain an injury while engaged in voluntarily chosen activity under circumstances showing that plaintiff knew and appreciated the specific risks of the chosen activity that caused the injury? (3 Cal.4th at pp. 322-324, conc. and dis. opn. of Panelli, J.)

Justice Kennard would also apply the "consent-based" analysis but reverse the judgment because, in the absence of uncontroverted evidence "that defendant's aggressive style of play was appropriate, there is no basis for the plurality's conclusion that his injury-causing conduct in knocking plaintiff to the ground was within the range of ordinary and acceptable behavior for the ill-defined sports activity in which plaintiff was injured." (3 Cal.4th at p. 338, dis. opn. of Kennard, J.)

In *Ford* v. *Gouin, supra,* 3 Cal.4th 339, Justice Arabian, author of the lead opinion, would again apply the duty analysis and affirm summary judgment in favor of the defendant because, as a coparticipant in a sports activity, defendant owed only a limited duty to plaintiff: not to intentionally injure plaintiff or engage in conduct so reckless as to be totally outside the range of the ordinary activities involved in the sport. Moreover, a statute (Harb. & Nav. Code, § 658, subd. (d)) that imposed a duty on the driver of a boat towing a skier to avoid collisions between the skier and other persons or objects was "not designed to create a duty of care on the part of the driver of the vessel to the persons being towed." (*Ford, supra,* 3 Cal.4th at p. 349.)

Justice Kennard, in a concurring opinion with which Justices Panelli and Baxter concurred, would again apply the consent-based analysis and find no

liability because the case "presents a classic example of implied assumption of risk: plaintiff, an experienced water-skier, skied barefoot and backward in a narrow tree-lined channel where he had skied before; he owned the boat and the rope towing him, he selected the site and the speed; and he knew that this manner of skiing prevented him from crossing from one side of the boat to the other to avoid colliding with overhanging tree branches. Plaintiff's voluntary decision to engage in an activity that he knew to be dangerous should bar him from suing the ski boat driver for the harmful consequences resulting from the choice plaintiff made." (3 Cal.4th at p. 351, conc. opn of Kennard, J.)

Justice George, joined by Chief Justice Lucas, in a concurring and dissenting opinion, agrees with the lead opinion's duty analysis and the limited duty of care for coparticipants, but disagrees with the conclusion that the skier being towed was not within the class of persons the statute (Harb. & Nav. Code, § 658, subd. (d)) was intended to protect.

"Because the declarations submitted in support of and in opposition to the summary judgment motion raise a triable issue of fact as to whether defendant's conduct breached a legislatively created duty of care owed to plaintiff under [Harbors and Navigation Code] section 658, subdivision (d), and Evidence Code section 669, I conclude that summary judgment should not have been granted in favor of defendant under the doctrine of assumption of risk." (3 Cal.4th at p. 368, conc. and dis. opn. of George, J.)

Justice Mosk predictably would reverse the summary judgment because "we should abolish the anachronistic doctrine of implied assumption of risk." (3 Cal.4th at p. 369, dis. opn. of Mosk, J.) He further disagrees with the lead opinion's interpretation of the statute (Harb. & Nav. Code, § 658, subd. (d)) and agrees with Justice George's opinion in this regard. (3 Cal.4th at p. 369.)

Our task is to attempt to divine from these multiple opinions whether the doctrine of implied assumption of risk would bar plaintiffs' recovery in the factual situation here presented. We conclude that it does not.

Education Code section 44807 provides in pertinent part:

"Every teacher in public schools shall hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess. . . ."

This section has been cited as imposing upon a school district a duty to supervise pupils on school grounds:

"While school districts and their employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]' (*Taylor* v. *Oakland Scavenger Co.* (1941) 17 Cal.2d 594, 600 . . . ; Ed. Code, § 13557 [now § 44807]. . . . The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' [Citations.] Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision. Under section 815.2, subdivision (a) of the Government Code, a school district is vicariously liable for injuries proximately caused by such negligence.

". . . Supervision during recess and lunch periods is required, in part, so that discipline may be maintained and student conduct regulated. Such regulation is necessary precisely because of the commonly known tendency of students to engage in aggressive and impulsive behavior which exposes them and their peers to the risk of serious physical harm." (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747-748 [87 Cal.Rptr. 376, 470 P.2d 360], fns. omitted; See also *In re William G.* (1985) 40 Cal.3d 550, 556, fn. 16 [221 Cal.Rptr. 118, 709 P.2d 1287].)

This duty of supervision is also found in California Code of Regulations, title 5, section 5552, which provides:

"Where playground supervision is not otherwise provided, the principal of each school shall provide for the supervision by certificated employees of the conduct and safety, and for the direction of play, of the pupils of the school who are on the school grounds during recess and other intermissions and before and after school."

In view of the existence of a clearly defined legal duty on the part of the District to supervise plaintiff John Lucas and his fellow students to prevent precisely what occurred in the case at bar, we conclude that regardless of what approach is made to the applicability of the doctrine of implied assumption of risk—be it the duty analysis, the consent-based analysis or Justice Mosk's view, the doctrine would not bar plaintiffs' recovery. Under the duty analysis, the case falls within the secondary assumption of risk category—the District owed a duty of care to John Lucas, who proceeded to

encounter a known risk occasioned by the District's breach of that duty. Under the consent-based approach recovery would not be barred by assumption of the risk because John Lucas was within the class of persons Education Code section 44807 and California Code of Regulations, title 5, section 5552 were designed to protect and it cannot be held, as a matter of law, he voluntarily assumed the risk the District would breach its legally imposed duty of care. And, of course, Justice Mosk would eliminate the doctrine of implied assumption of risk as a bar to recovery.

Accordingly, triable issues of fact remain to be resolved by the trier of fact and summary judgment in favor of the District was erroneously granted.

## DISPOSITION

The judgment is reversed with costs to appellants.

Dibiaso, J., and Gildner, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied June 24, 1993. Baxter J., did not participate therein.

---

*Judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.