[No. D015454. Fourth Dist., Div. One. Apr. 30, 1993.]

MILWAUKEE ELECTRIC TOOL CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
LAWRENCE VONDRASEK et al., Real Parties in Interest.

**COUNSEL**

Meyers, Bianchi & McConnell, John W. McConnell III, Timothy R. Owen, Jeffrey M. Cohon and Fred J. Hiestand for Petitioner.

Downey, Brand, Seymour & Rohwer, Roberta L. Franklin, Michael D. Long and Harvey M. Grossman as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Greene, Broillet, Taylor & Wheeler, Bruce A. Broillet, Frank J. O'Kane, Jr., Dofflemyre & Dietz, Geoffrey M. Northrop, Beth D. Blue, Esner, Marylander, Zakheim & Higa, Stuart B. Esner, Grant Marylander and Rosalyn S. Zakheim for Real Parties in Interest.

## OPINION

**HUFFMAN, Acting P. J.**—The Supreme Court in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] and *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724] has recently outlined a set of rules for the proper application of the "assumption of risk" doctrine in negligence cases in light of California comparative fault principles. We are now required to apply those rules to causes of action sounding in strict products liability and breach of warranty. In this petition for writ of mandate, petitioner Milwaukee Electric Tool Corporation (Milwaukee) (defendant in an action by plaintiff and real party in interest Lawrence Vondrasek for damages for personal injury on the theories of strict liability, breach of warranty, and negligence) argues it is entitled to extraordinary relief from the trial court's order denying in part Milwaukee's motion for summary adjudication. (Code Civ. Proc., § 437c, subd. (f).) The adjudication which Milwaukee sought would have established that its affirmative defense of reasonable implied assumption of the risk barred Vondrasek's claims for strict products liability and breach of warranty, relating to the injuries he suffered while using a power tool manufactured by Milwaukee.[1]

In our original opinion in this case (filed Mar. 30, 1992), we denied the petition on the theory that triable issues of fact remained as to the extent of Vondrasek's subjective appreciation of the risk he encountered through using the tool, and the extent of his voluntary consent to relieve Milwaukee of liability for injuries he might incur in using its product. The Supreme Court granted review, issued its decision in *Knight*, and directed this court to vacate its prior opinion and reconsider in light of that decision.

---

[1]In *Knight* v. *Jewett, supra*, 3 Cal.4th 296 (hereafter *Knight*), the Supreme Court preferred to discuss assumption of the risk in terms of primary and secondary categories, as will be discussed; Milwaukee's moving papers, however, used the earlier formulation of the defense, reasonable and unreasonable implied assumption of the risk (see *Ordway* v. *Superior Court* (1988) 198 Cal.App.3d 98 [243 Cal.Rptr. 536]). Our focus, of course, will be upon the concepts set forth in *Knight*.

Further background information on this action: An additional real party in interest, Liberty Mutual Insurance Company (Liberty Mutual), seeks through its complaint in intervention (Lab. Code, § 3852) to recover workers' compensation benefits paid to Vondrasek after his injury. Liberty Mutual joins Vondrasek in opposing Milwaukee's petition for writ of mandate. An additional real party in interest, plaintiff Ramona Vondrasek, has not challenged the trial court's order summarily adjudicating that her claim for loss of consortium was without merit on the grounds that she and plaintiff Lawrence Vondrasek were not married at the time of his injury.

We also note that Lawrence Vondrasek has not challenged the trial court's ruling on the motion for summary adjudication granting Milwaukee's request that the cause of action for negligence be adjudicated in its favor, on the basis that reasonable implied assumption of the risk barred that claim. Moreover, Milwaukee's petition does not present any issue concerning the negligence claim for our consideration, and it is not before us in this writ; we will discuss this procedural state of affairs in more detail at pages 554-555, *post*.

Following the procedure outlined in *Knight*, we again conclude the petition for writ of mandate must be denied because Milwaukee has failed to show the absence of any duty of care toward Vondrasek under these circumstances. As we will explain, when we examine the nature of the activity in which Milwaukee is engaged (manufacturing power tools), and the relationship of Milwaukee and Vondrasek to that activity, we conclude Milwaukee owes a general duty to produce defect-free products, which translates into a duty similar to that in negligence law not to depart from the appropriate standards of care in manufacturing its product. (*DeLeon* v. *Commercial Manufacturing & Supply Co.* (1983) 148 Cal.App.3d 336, 348 [195 Cal.Rptr. 867].) In its motion, Milwaukee failed to show a lack of duty such that the governing theory should be primary assumption of risk, or that it should owe no legal duty to protect Vondrasek from the particular risk of harm that caused the injury. Thus, Milwaukee has not shown the defense of primary assumption of the risk applies as a complete bar to any recovery by Vondrasek. (*Knight, supra,* 3 Cal.4th at pp. 314-315.)

Instead, the facts as currently established at the motion for summary adjudication stage of the proceeding show that this products liability claim fits into the category of secondary assumption of risk "where the defendant does owe a duty of care to the plaintiff, but the plaintiff proceeds to encounter a known risk imposed by the defendant's breach of duty." (*Knight, supra,* 3 Cal.4th at p. 315.) In such a case, the assumption of risk doctrine is merged into the comparative fault scheme so that the trier of fact may apportion the loss resulting from the injury by considering the relative responsibility of the parties. For this reason, we conclude the trial court correctly denied summary adjudication of the applicability of assumption of the risk to the strict liability and breach of warranty theories, and the petition is accordingly denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Milwaukee's separate statement in support of its motion for summary adjudication sets out the facts essentially as follows. At the time Vondrasek was injured, he was a union tradesman, a glazier, with more than seven years of experience on the job. The drill which he was operating at the time of the accident was a Milwaukee heavy-duty hole shooter, a one-half inch capacity, variable-speed drill. This drill was equipped with a side-support handle which was designed to control rotational forces generated by the drill. As Vondrasek, perched on the upper steps of an A-frame ladder, was drilling through angle iron, he let go of the drill's side handle with his left hand and grabbed a mullion (post) on the building on which he was working. As he, with his right hand, was pushing the drill as hard as he could, the drill bit

"hung up and stopped," causing the body of the drill to rotate in a counter-clockwise direction. In his previous work with drills, Vondrasek had experienced the binding-up phenomenon at least 20 to 30 times before this accident. He had formed the opinion that Milwaukee's drills had a tendency to bind up while drilling through iron.

After the drill malfunctioned, Vondrasek was thrown to the ground. He sustained severe injuries to his right wrist and arm. He then brought this complaint for damages for strict liability, breach of express and implied warranty, and negligence against Milwaukee, the designer and manufacturer of the drill.[2] Milwaukee answered, raising a number of affirmative defenses, including knowing and voluntary assumption of the risk.

In its motion for summary adjudication, Milwaukee relies on Vondrasek's deposition to show that he was "absolutely" familiar with the written instruction manual for this drill before the accident. This instruction manual stated in pertinent part: "Always use side handle to maintain safe control." "DON'T FORCE TOOLS. It will do the job better and safer at the rate for which it was designed."

According to a declaration by Milwaukee's senior products engineer, the warning label which would have been attached to this drill read:

"WARNING — HIGH ROTATING FORCE. ALWAYS USE SIDE HANDLE AND HOLD OR BRACE SECURELY TO PREVENT PERSONAL INJURY OR DAMAGE TO THE TOOL. READ SAFETY INSTRUCTIONS BEFORE OPERATION."

Vondrasek's deposition, submitted to the trial court in support of Milwaukee's motion and presented to this court as part of Milwaukee's exhibits to its petition, states additional facts about the manner in which the accident occurred. At the time of the accident, the side handle of the drill was resting on the top of his left forearm at the elbow, as he was holding the drill with his right hand and pushing into the iron that he was drilling. When the drill bit locked up and the drill motor spun around, Vondrasek lost his balance and fell off the ladder. He was unable to get his hand off of the drill because his wrist had become locked into position and he could not move his finger off the trigger.

In Vondrasek's opposition to Milwaukee's motion for summary adjudication, he elected to treat Milwaukee's motion as presenting a pure question of law: whether the doctrine of reasonable implied assumption of the risk was

[2]Milwaukee is a subsidiary of an additional defendant, Amstar, which prevailed in an earlier motion for summary judgment because it had no connection with this tool.

applicable in this products liability setting. Vondrasek therefore did not submit any declarations addressing the issue of whether the drill was defective in design, instead relying on an argument that even if implied assumption of the risk were applicable with respect to products liability claims, it would be a question of fact for the jury to determine.

At the hearing on the motion for summary adjudication, the trial court first granted Milwaukee's motion that the second cause of action for negligence should be summarily adjudicated against Vondrasek, on the authority of *Ordway* v. *Superior Court, supra*, 198 Cal.App.3d 98 (holding that reasonable implied assumption of the risk applied to this cause of action and was a total bar to recovery), since Vondrasek's deposition showed he reasonably assumed the risk of injury. (See fn. 1, *ante*.)

In the portion of the ruling we review, the trial court denied the motion for summary adjudication as to the first cause of action for strict liability and the third cause of action for breach of express and implied warranty on the basis that the doctrine of reasonable implied assumption of the risk did not apply to those claims under *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162], and there was no later authority cited to show that the doctrine should bar plaintiff's claims. After disposing of Mrs. Vondrasek's loss of consortium claim (see fn. 1, *ante*), the court declined to rule on Milwaukee's request for summary adjudication of Liberty Mutual's complaint in intervention because the arguments on that issue were not considered by the court (because they appeared in points and authorities of an excessive length under San Diego Superior Court Local Rule No. 4.1, subdivision (b)).

On Milwaukee's petition for writ of mandate and request for a stay of the trial date scheduled for October 15, 1991, this court issued the stay and set the matter for oral argument. Additional briefing and amicus curiae briefing (Cal. Rules of Court, rule 14(b)) from the California Manufacturers' Association and the Association for California Tort Reform were obtained.

We issued our previous decision on March 30, 1992, and the Supreme Court granted review and transferred the matter to this court for reconsideration in light of *Knight* by order of December 4, 1992. After vacating our previous decision, we obtained further briefing from the parties, as well as amicus curiae briefing by the Product Liability Advisory Council, Inc., and further oral argument was held.

## DISCUSSION

We originally issued the order to show cause why this petition for writ of mandate should not be granted because this issue of first impression

meets several of the criteria for entitlement to relief by way of extraordinary writ: the issue set forth in the writ petition is of widespread interest, there is a conflict in the law among the Courts of Appeal, and there is a potential for harm or prejudice to Milwaukee by requiring it to go through a trial if such is not warranted by the current state of the law on assumption of the risk. (*Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1273-1274 [258 Cal.Rptr. 66].) However, as will be explained below, we conclude the trial court's denial of the summary adjudication requested (that the assumption of the risk defense would be a bar to Vondrasek's causes of action for strict products liability and breach of express and implied warranties) was correct. Although we decline to grant the petition because we find Milwaukee has not shown the absence of a duty under these facts, we are required to discuss the extent to which assumption of the risk applies in a products liability context, not only for the guidance of the trial court and parties at further proceedings, but because of the unsettled nature of the law on this topic.

As a threshold matter, we explain that, for purposes of our discussion here, we shall treat Vondrasek's two separate causes of action—strict products liability and breach of express and implied warranties—as equivalent, alternative methods of pleading the same basic theory of liability.

In *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], the Supreme Court rejected contract and warranty theories as a basis for liability for an injury caused by a product. "Strict liability . . . did not rest on a consensual foundation but, rather, on one created by law. The liability was created judicially because of the economic and social need for the protection of consumers in an increasingly complex and mechanized society, and because of the limitations in the negligence and warranty remedies." (*Daly* v. *General Motors Corp., supra*, 20 Cal.3d 725, 733, citing *Greenman* v. *Yuba Power Products, Inc., supra*.) Because of the close relationship of Vondrasek's two theories of liability (Rest.2d Torts, § 402A, com. m), we discuss these two concepts together in connection with the assertion of an affirmative defense of assumption of the risk.

On a further introductory note, we must emphasize the troublesome procedural context of this case. As we noted in footnote 1, *ante,* Vondrasek has not sought extraordinary relief from the portion of the trial court's order granting Milwaukee's motion for summary adjudication and determining that assumption of the risk bars the cause of action for negligence. Under Code of Civil Procedure, section 437c, subdivision (*l*), such a cross-petition for mandamus could have been brought to challenge the granting of that part

of the motion; during the five months that this matter was initially pending in this court, no such action was taken. We can only assume, therefore, that Vondrasek has made a tactical decision to seek trial only on his strict products liability and breach of warranty claims.

In recognizing this procedural state of affairs, we do not mean to imply that there is any doctrinal reason for treating any of Vondrasek's three alternative products liability causes of action differently with respect to the assertion of the affirmative defense of assumption of the risk. Although *Knight* generally provides clear guidance on an ordinary negligence cause of action, in the strict products liability context where negligence is pled the issue remains unsettled. Here, the same facts gave rise to each of Vondrasek's three alternative theories and to the affirmative defense pled. However, since Milwaukee's petition only addressed the causes of action for strict products liability and breach of warranty, our disposition of this petition will only affect those theories of Vondrasek's complaint.

To carry out our task of considering this petition in light of the principles expressed in *Knight, supra*, 3 Cal.4th 296, we first reiterate that in *Knight*, the Supreme Court discussed assumption of the risk as it applied to a complaint sounding in negligence (and thus alleging duty, breach, causation, and damages). The same was true of *Knight*'s companion case, *Ford* v. *Gouin, supra*, 3 Cal.4th 339. Here, however, for the reasons explained above, we are required to treat Vondrasek's negligence cause of action as defunct at this writ stage of the proceeding, and to deal solely with his causes of action for strict products liability and breach of warranty. We cannot, however, apply *Knight*'s duty analysis without first discussing the theoretical background of strict products liability and comparing it to negligence. That analysis will then lead into our application of the primary and secondary assumption of the risk rules established by *Knight*.

I

*Strict Products Liability*

*In Daly* v. *General Motors Corp., supra*, 20 Cal.3d at pages 732-733, the Supreme Court described the evolution of strict products liability:

"In *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], confronted with injury to an ultimate consumer caused by a defective power tool, we fastened strict liability on a manufacturer who placed on the market a defective product even though both privity and notice of breach of warranty were lacking. We

rejected both contract and warranty theories, express or implied, as the basis for liability. Strict liability, we said, did not rest on a consensual foundation but, rather, on one created by law. The liability was created judicially because of the economic and social need for the protection of consumers in an increasingly complex and mechanized society, and because of the limitations in the negligence and warranty remedies. Our avowed purpose was 'to insure that the costs of injuries resulting from defective products are borne by the manufacturer that put such products on the market rather than by the injured persons who are powerless to protect themselves.' [Citation.] Subsequently, the *Greenman* principle was incorporated in section 402A of the Restatement Second of Torts, and adopted by a majority of American jurisdictions. [Citation.]"

In *Daly, supra*, 20 Cal.3d 725, the Supreme Court was careful to explain that strict liability is not equivalent either to absolute liability, or to insurance of the safety of the product's user. (*Id.* at p. 733.) To recover damages, a plaintiff must show his or her injury was caused by a defect in the product. (*Ibid.*) The Supreme Court emphasized that the concept of strict products liability had been subject to judicial evolution during which "the doctrinal encumbrances of contract and warranty, and the traditional elements of negligence, were stripped from the remedy, and a new tort emerged which extended liability for defective product design and manufacture beyond negligence but short of absolute liability." (*Ibid.*)

Later, in *Brown* v. *Superior Court* (1988) 44 Cal.3d 1049, 1056 [245 Cal.Rptr. 412, 751 P.2d 470], the Supreme Court further explained:

"Strict liability differs from negligence in that it eliminates the necessity for the injured party to prove that the manufacturer of the product which caused injury was negligent. It focuses not on the conduct of the manufacturer but on the product itself, and holds the manufacturer liable if the product was defective."

Further on this point, it is well established that one of the principal purposes behind strict products liability theory "is to relieve an injured plaintiff of many of the onerous evidentiary burdens inherent in a negligence cause of action." (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 431 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].) Strict products liability theory has thus been viewed as a "short cut" to liability where negligence may be present but may be difficult to prove. (*Pierce* v. *Pacific Gas & Electric Co.* (1985) 166 Cal.App.3d 68, 83 [212 Cal.Rptr. 283]; *Montez* v. *Ford Motor Co.* (1980) 101 Cal.App.3d 315, 318-319 [161 Cal.Rptr. 578]; *Barrett* v. *Superior Court* (1990) 222 Cal.App.3d 1176, 1187 [272 Cal.Rptr.

304].) In *GEM Developers* v. *Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 428 [261 Cal.Rptr. 626], in discussing equitable allocation of loss among multiple defendants, this court opined:

"There is no question that a manufacturer has a duty, i.e. a responsibility, to provide consumers with defect-free products; that duty underlies strict product liability. The duty exists independently of any lawsuit filed by a consumer; a consumer's lawsuit does not create the manufacturer's duty, rather it seeks to enforce that preexisting duty and to recover damages for its breach."

Notwithstanding the emphasis in all this authority on the simplified nature of a plaintiff's burden in alleging and proving strict products liability, some concepts of negligence law have been imported into strict liability theory and retain importance in such analysis. ■ For example, a plaintiff injured by an allegedly defective product may seek recovery at the same time on alternate theories of strict liability in tort and in negligence, and may obtain jury instructions on both theories. (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].) "[T]o a large extent the two theories parallel and supplement each other." (*Ibid.*) In *DeLeon* v. *Commercial Manufacturing & Supply Co., supra,* 148 Cal.App.3d at page 348, the court recognized an ongoing analytical debate on the mixing of traditional strict liability, warranty, and negligence "to form an umbrella prompted by social considerations." (*Ibid.*) The court commented:

"Dean Prosser has not overlooked this melding of legal theory. In reference to product design, he notes that it is one of 'two particular areas in which the liability of the manufacturer, even though it may occasionally be called strict, appears to rest primarily upon a departure from proper standards of care, so that the tort is essentially a matter of negligence.' (Prosser, Law of Torts (4th ed. 1971) p. 644, fn. omitted.)

"Similarly, in *Balido* v. *Improved Machinery, Inc.* [1972] 29 Cal.App.3d [633] at page 640 [105 Cal.Rptr. 890], the court observed that in deficient design cases 'strict liability and negligence claims merge.' " (*DeLeon* v. *Commercial Manufacturing & Supply Co., supra,* 148 Cal.App.3d at p. 348; see also 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1244, pp. 679-680.)

In *Fluor Corp.* v. *Jeppesen & Co.* (1985) 170 Cal.App.3d 468, 479-480 [216 Cal.Rptr. 68], the court explained that even if a manufacturer acted as a reasonably prudent manufacturer would have under the circumstances, and

thus could be absolved of negligence, strict liability could still be imposed under such circumstances if a defective design were found. (*Ibid.*, citing *Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d at p. 434.)[3]

In *Daly* v. *General Motors Corp., supra,* 20 Cal.3d at pages 734-736, the Supreme Court explained that the twin principles of strict products liability and traditional negligence can be blended or accommodated toward the goal of attaining a just and equitable result. Before the Supreme Court in *Daly* v. *General Motors Corp.* decided that the comparative negligence principles of *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] should apply to actions sounding in strict products liability, it examined the foundational reasons underlying the creation of strict products liability in California to ascertain whether the purposes of the doctrine would be defeated or diluted by adoption of comparative principles. (*Daly* v. *General Motors Corp., supra,* 20 Cal.3d at p. 736.) It concluded that applying comparative negligence rules in the strict products liability context furthered the "fundamental and underlying purpose of *Li*" (*id.* at p. 737), "to promote the equitable allocation of loss among all parties legally responsible in proportion to their fault." (*Ibid.*) The court explained, "[W]e do not permit plaintiff's own conduct relative to the product to escape unexamined, and as to that share of plaintiff's damages which flows from his own fault we discern no reason of policy why it should, following *Li* , be borne by others." (*Daly* v. *General Motors Corp., supra,* 20 Cal.3d at p. 737.)

In addition to the concepts of fault and comparative fault as common to both negligence actions and those founded in strict products liability theory (*Barrett* v. *Superior Court, supra,* 222 Cal.App.3d at p. 1189), the concept of foreseeability is involved in both types of actions. ■ "In actions premised on strict products liability, just as in actions premised on negligence, an element of foreseeability is involved; liability may not be imposed unless the injury results from a use of the product which is reasonably foreseeable. (*Daly* v. *General Motors Corp., supra,* 20 Cal.3d 725, 733.)" (*Barrett, supra,* 222 Cal.App.3d at p. 1190.) Even if an injured plaintiff's acts constituted misuse of a product, if those acts were foreseeable, strict liability may still apply, although the plaintiff's comparative negligence might serve to reduce any award he or she might receive proportionate to such fault. (*DeLeon* v. *Commercial Manufacturing & Supply Co., supra,* 148 Cal.App.3d at p. 344.) ■ In apportioning and comparing fault, an injured plaintiff's conduct is to be compared with the defendant manufacturer's product, not the manufacturer's conduct. (*Fluor Corp.* v. *Jeppesen & Co., supra,* 170 Cal.App.3d at p. 480.)

---

[3]A commentator has analogized some forms of strict liability to "negligence per se." (Schwartz, Comparative Negligence (2d ed. 1986) § 12.7, pp. 212-213.)

All of this authority provides support for this court's intuitive statement in *GEM Developers* v. *Hallcraft Homes of San Diego, Inc., supra,* 213 Cal.App.3d at page 428 that "[t]here is no question that a manufacturer has a duty, i.e., a responsibility, to provide consumers with defect-free products; that duty underlies strict product liability." (*Ibid.*) Although strict products liability causes of action need not be pled in terms of classic negligence elements (duty, breach, causation and damages), the concept of a manufacturer's duty to provide defect-free products is inherent in the usual form of pleading of a strict liability cause of action:

"(1) [T]he product reached plaintiff without substantial change in its condition; (2) the product was used in the manner intended; and (3) plaintiff was injured as a result of a defect in the product, of which the plaintiff was not aware, making the product unsafe for its intended use. [Citations.]" (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 579, pp. 617-618.)

Therefore, because of the functional similarity between negligence theory and strict products liability insofar as duty and breach is concerned (see 2 Shapo, The Law of Products Liability (2d ed. 1990) § 26.04, pp. 26-18 to 26-27), we have no hesitation in applying the duty analysis of *Knight, supra,* 3 Cal.4th at pages 307-315, to decide whether Milwaukee may properly assert either primary assumption of the risk as a complete defense against liability to Vondrasek, or secondary assumption of the risk in order to obtain a comparative fault treatment of liability here.

We should note, however, that in supplemental briefing, Milwaukee and amicus curiae The Product Liability Advisory Council, Inc., have vigorously argued for application of the "implied consent" approach to assumption of the risk as outlined by the dissenting opinion in *Knight, supra,* 3 Cal.4th at pages 324-338 (dis. opn. of Kennard, J.) and a concurring opinion in *Ford* v. *Gouin, supra,* 3 Cal.4th at pages 351-364 (conc. opn. of Kennard, J.). Those writers strongly advocated that a plaintiff who has proceeded to encounter a known risk should be deemed to have impliedly consented to any harm incurred and should be totally precluded from recovering damages as compensation from the party who posed the known risk. (*Ibid.*) Their approach would seem to have some support in language dealing with assumption of the risk in the products liability context, found in the Restatement of Torts 2d, section 402A, comment n, as follows:

"Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passing under

the name of assumption of the risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

The plurality opinion in *Knight* and the lead opinion in *Ford, supra,* 3 Cal.4th 339, however, both expressly rejected the use of an implied consent approach and analyzed assumption of the risk in terms of duty instead. Commenting upon the dissent's approach, the plurality opinion in *Knight* critically said:

"*Li* explicitly held that a plaintiff who ' "*unreasonably* undertakes to encounter a specific known risk imposed by a defendant's negligence" ' (*Li, supra,* 13 Cal.3d at p. 824) is *not* completely barred from recovery; instead, the recovery of such a plaintiff simply is reduced under comparative fault principles. Thus, the dissenting opinion's implied consent argument is irreconcilable with *Li* itself." (*Knight, supra,* 3 Cal.4th at p. 311.)

Guided by these statements, we do not find the implied consent approach controlling or even useful here. (See 9 Witkin, Cal. Procedure, *supra,* Appeal, § 552, pp. 539-540; *Davis* v. *Gaschler* (1992) 11 Cal.App.4th 1392, 1397 [14 Cal.Rptr.2d 679]; *Tan* v. *Goddard* (1993) 13 Cal.App. 4th 1528 [17 Cal.Rptr.2d 89]; *Stimson* v. *Carlson* (1992) 11 Cal.App.4th 1201, 1205-1206 [14 Cal.Rptr.2d 670]; cf. *Lucas* v. *Fresno Unified School District* (1993) 14 Cal.App.4th 866 [18 Cal.Rptr.2d 79].) We shall next explain and apply the duty-based analysis to these facts.

## II

### Primary Versus Secondary Assumption of the Risk

In *Knight, supra,* 3 Cal.4th at pages 303-315, the Supreme Court distinguished between primary and secondary assumption of the risk, explaining the distinction between the two as originally set forth in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804. The two categories are:

"(1) those instances in which the assumption of risk doctrine embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk—the category of assumption of risk that the legal commentators generally refer to as 'primary assumption of risk'— and (2) those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty—what most commentators have termed

'secondary assumption of risk.' Properly interpreted, the relevant passage in *Li* provides that the category of assumption of risk cases that is not merged into the comparative negligence system and in which the plaintiff's recovery continues to be completely barred involves those cases in which the defendant's conduct did not breach a legal duty of care to the plaintiff, i.e., 'primary assumption of risk' cases, whereas cases involving 'secondary assumption of risk' properly are merged into the comprehensive comparative fault system adopted in *Li*." (*Knight, supra*, 3 Cal.4th at p. 308, fns. omitted.)

After disposing of the implied consent analysis promulgated by the dissent, the majority in *Knight* summarized its general conclusions as to the current state of the doctrine of assumption of risk in light of comparative fault principles. Rather than focusing on (1) the reasonableness or unreasonableness of the injured plaintiff's conduct, or (2) his or her subjective knowledge and voluntary choice to encounter a risk posed by defendant's conduct, or (3) any implied consent to relieve the defendant of any duty of care toward such a plaintiff, the court instead inquired whether the defendant's conduct breached a legal duty of care to the plaintiff. (*Knight, supra*, 3 Cal.4th at pp. 314-315.) In order to make this determination of whether the defendant owes a legal duty to protect the plaintiff from a particular risk of harm, a court is to examine the nature of the activity in which the defendant is engaged, "and the relationship of the defendant and the plaintiff to that activity . . . ." (*Id.* at p. 309.) Only when it has been determined by the court whether a duty on the part of the defendant exists can it be decided whether primary or secondary assumption of the risk is involved in a particular set of facts. We shall discuss the two elements of the test for such a duty separately.

A

*Nature of Defendant's Activity*

In part I, *ante*, we outlined the relationship between negligence liability, such as the court in *Knight* discussed, and strict products liability. To review, the theory of strict products liability goes beyond negligence and provides a short cut to a showing of liability, but does not constitute absolute liability or insurance in favor of an injured plaintiff. (*Daly* v. *General Motors Corp., supra*, 20 Cal.3d at pp. 733-737.) ■ A plaintiff may pursue strict products liability on companion theories of negligence or breach of warranty. (*Jiminez* v. *Sears, Roebuck & Co., supra*, 4 Cal.3d 379.) There is a melding of legal theory in strict products liability, such that a finding of strict liability rests on a showing that the manufacturer departed from proper standards of care. (*DeLeon* v. *Commercial Manufacturing & Supply Co., supra*, 148 Cal.App.3d at pp. 348-350.)

▆▆▆ In this case, Vondrasek has effectively alleged that Milwaukee's activity which injured him was the production of a defective product, and has claimed that Milwaukee should be held strictly liable for his injuries. We find nothing in the nature of the manufacturing activity to indicate that a finding of no duty on the manufacturer's part should be made. To the contrary, we believe there is a sound basis in the development of strict products liability doctrine to support analysis of a products liability case, even one involving an assertion of assumption of the risk, in terms of a duty on the part of the manufacturer to produce defect-free products. (*GEM Developers* v. *Hallcraft Homes of San Diego, Inc., supra*, 213 Cal.App.3d at p. 429.)

## B

### Relationship of Defendant and Plaintiff to the Activity

Turning to the next part of the *Knight* formulation for the existence of a duty, we consider the relative activity of Milwaukee and Vondrasek in the use of this tool. The real question is whether Vondrasek's allegedly dangerous misuse of the tool reduces or removes any duty from Milwaukee in connection with the activity. Since this matter arose in an employment-related context, reference to the "firefighter's rule" is helpful. In *Knight, supra*, 3 Cal.4th at pages 309-310, footnote 5, the Supreme Court referred to this rule as a prime example of primary assumption of the risk:

"In its most classic form, the firefighter's rule involves the question whether a person who negligently has started a fire is liable for an injury sustained by a firefighter who is summoned to fight the fire; the rule provides that the person who started the fire is not liable under such circumstances. [Citation.] Although a number of theories have been cited to support this conclusion, the most persuasive explanation is that the party who negligently started the fire had no legal duty to protect the firefighter from the very danger that the firefighter is employed to confront. [Citations.]" (*Knight, supra*, 3 Cal.4th at pp. 309-310.)

The doctrine of primary assumption of the risk has also been applied to find a defendant, who owned a dangerous dog which bit a veterinary assistant, was impliedly relieved of any duty of care by the plaintiff assistant's acceptance of employment involving a known risk or danger. (*Nelson* v. *Hall* (1985) 165 Cal.App.3d 709, 714 [211 Cal.Rptr. 668].)

Although there are parallels in this authority to the facts before us, we do not find that an injury claimed to have been caused by a dangerously

defective power tool is "a risk that is inherent" in a worker's job. (*Nelson* v. *Hall, supra*, 165 Cal.App.3d at p. 714.) In the relationship of the defendant and the plaintiff to the activity, the use of the tool, it cannot be said that the plaintiff user undertook to act as a product tester or guinea pig. In other words, those defendants in primary assumption of the risk cases who have been found not to owe any duty to an injured plaintiff (for example, a negligent person who started a fire or an owner of a dangerous dog) are in a different position than is a manufacturer of a tool which ultimately causes injury to its user, because the user was not necessarily a professional employed to confront the very danger posed by the injury-causing agent. In short, we are not persuaded that the reasons supporting the firefighter's rule indicate that primary assumption of the risk also exists in the strict products liability context.

To further attempt to rebut any finding that it owed a duty of care to this plaintiff, Milwaukee argues in its supplemental briefing that the focus of analysis should be removed from duty and placed upon proximate causation instead:

"The 'duty approach' to [implied assumption of risk] is an *objective* one which focuses not on the plaintiff's state of mind, but on the policy issue of whether liability should attach to the defendant for the plaintiff's injury. In the negligence context this is parsed in terms of whether defendant owes the plaintiff a duty of protection from a particular risk of harm; in the strict products liability context this issue is parsed in terms of the policy component of proximate cause."

Thus, Milwaukee is claiming that because of Vondrasek's contributory negligence or misuse of the tool here, "certain policy concerns regarding the limits of liability" are invoked. (*Evan F.* v. *Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 834 [10 Cal.Rptr.2d 748].) Milwaukee relies on authority that proximate causation is an essential element of a strict liability cause of action. (See 6 Witkin, Summary of Cal. Law, *supra*, Torts, § 1304, pp. 757-759.) ■ Causation in fact, i.e., whether the defendant's negligent conduct was a necessary antecedent to the injury, without which none would have occurred, is but an element of proximate cause. (*Maupin* v. *Widling* (1987) 192 Cal.App.3d 568, 573 [237 Cal.Rptr. 521].)

"Proximate cause asks the larger, more abstract question: should the defendant be held responsible for negligently causing the plaintiff's injury? [Citation.] Whether a defendant's conduct is an actual cause of a plaintiff's harm is a question of fact, but the existence and extent of a defendant's liability is a question of law and social policy. [Citations.] Proximate cause can mean more than cause in fact. [Citation.]

"Whether an intervening cause will cut off a defendant's liability (supervening cause) is another consideration in determining whether proximate cause exists." (192 Cal.App.3d at pp. 573-574.)[4]

While Milwaukee's novel theory of using *Knight* as a test for causation rather than duty has a certain surface appeal, we cannot disregard the authority which shows the historically close relationship between negligence theory and strict products liability doctrine. In transferring this case back to this court, the Supreme Court directed that the authority of *Knight* be considered in deciding the matter again. Although the duty-based approach is not an exact fit for this strict products liability action, there are enough similarities between the two theories of recovery to allow this court to analyze Milwaukee's duty by looking at the nature of its activity in manufacturing the tool, and the relationship of Milwaukee and Vondrasek to that activity. (*Knight, supra,* 3 Cal.4th at p. 309.) ■■■ We do not deem this matter to be the extreme sort of case, testing "the limits of liability" (*Evan F. v. Hughson United Methodist Church, supra,* 8 Cal.App.4th at p. 834), which would require this court to use a legal causation analysis to find primary assumption of this risk applicable here; the flexible and commonsense principles of comparative fault to evaluate liability are a much better fit:

"Although we agree with the general thesis of amicus curiae's argument that persons generally should bear personal responsibility for their own actions, the suggestion that a duty approach to the doctrine of assumption of risk is inconsistent with this thesis rests on a mistaken premise. Past California cases have made it clear that the 'comparative fault' doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an 'equitable apportionment or allocation of loss.' [Citations.]" (*Knight, supra,* 3 Cal.4th at pp. 313-314, citing *Daly* v. *General Motors Corp., supra,* 20 Cal.3d at pp. 734-742, and related cases.)

In *Daly* the Supreme Court held that the purposes of strict products liability doctrine would be served by adoption of comparative fault principles. (*Daly* v. *General Motors Corp., supra,* 20 Cal.3d at p. 736; also see *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 330-332 [146

---

[4]In *Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1048-1054 [1 Cal.Rptr.2d 913, 819 P.2d 872], the Supreme Court disapproved BAJI No. 3.75 and its proximate causation language in favor of the more intelligible "substantial factor" test for causation found in BAJI No. 3.76. For our purposes, we will consider Milwaukee's argument about proximate causation as being addressed to the larger question of legal causation. (*Mitchell, supra,* 54 Cal.3d at pp. 1053-1054.)

Cal.Rptr. 550, 579 P.2d 441].) Here, too, we believe that the purposes of strict products liability doctrine will be well served by a finding that a manufacturer owes a duty to a user of its product, thus making the primary assumption of the risk doctrine inapplicable, absent some extraordinary circumstance not reflected by this record.

C

*Effect of a Finding of Duty on the Manufacturer's Part*

According to *Knight*, once it is found that a defendant owes a duty to a particular plaintiff, secondary assumption of the risk theory is merged into comparative fault. (*Knight, supra,* 3 Cal.4th at p. 315.) *Brown* v. *Superior Court, supra,* 44 Cal.3d at page 1056 teaches that strict liability, as opposed to negligence, "focusses [*sic*] not on the conduct of the manufacturer but on the product itself, and holds the manufacturer liable if the product was defective." Similarly, *Fluor Corp.* v. *Jeppesen & Co., supra,* 170 Cal.App.3d at page 480 explains that for purposes of apportioning comparative fault, a plaintiff's conduct is to be compared not to the defendant manufacturer's conduct, but to its product. (*Daly* v. *General Motors Corp., supra,* 20 Cal.3d at pp. 737, 743.)

■ In *Doupnik* v. *General Motors Corp.* (1990) 225 Cal.App.3d 849, 865-867 [275 Cal.Rptr. 715], the court discussed concurrent causes in the strict products liability context, where wrongful acts by both plaintiff and defendant manufacturer may be "necessary condition[s] of the harm." (*Id.* at p. 866.) In such a case, contributory negligence must be adjusted to the comparative fault determination. In apportioning fault, there may be more than one legal cause, and a jury should be instructed accordingly. (*Ibid.*; see BAJI Nos. 3.76 and 3.77, regarding the substantial factor test for causation and concurring causes; also see 6 Witkin, Summary of Cal. Law (9th ed., 1992 pocket supp.) Torts, § 1304, pp. 145-146.)

Accordingly, where the defendant manufacturer does owe a duty of care to the plaintiff, "but the plaintiff proceeds to encounter a known risk imposed by the defendant's breach of duty" (*Knight, supra,* 3 Cal.4th at p. 315), assumption of the risk is merged into the comparative fault scheme so that a trier of fact may consider the relative responsibility of the parties in apportioning the loss and damage resulting from the injury. (*Ibid.*) ■ We thus adopt the approach set forth by the court in *Davis* v. *Gaschler, supra,* 11 Cal.App.4th at page 1398 for such analysis of summary judgment or summary adjudication proceedings:

"Defendants, as the parties moving for summary judgment, had the burden to establish the absence of any basis for recovery under plaintiff's causes of

action . . . . Under *Knight*, this means they had the burden to show that this is a case of *primary* assumption of risk—where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendants owe no legal duty to plaintiff. *Otherwise, the case is subject to comparative fault principles and is thus inappropriate for summary judgment.*

"Here, defendants have not shown the absence of a legal duty to plaintiff." (*Id.* at p. 1398, third italics added.)

On this record, the trial court correctly denied Milwaukee's motion for summary adjudication to establish assumption of the risk as a bar to Vondrasek's causes of action for strict products liability and breach of warranty.[5] We accordingly deny Milwaukee's petition for writ of mandate.

## DISPOSITION

The petition is denied. The stay of trial is vacated. Each party shall bear its own costs.

Froehlich, J., and Nares, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied August 24, 1993. Panelli, J., Arabian, J., and Baxter, J., were of the opinion that the petition should be granted.

---

[5]As noted above, the limited issues presented by the petition and the failure of Vondrasek to challenge by writ the ruling that his negligence cause of action was barred by assumption of the risk prevent this court from issuing any decision on that particular cause of action. Moreover, since we, as explained above (pp. 553-554, *ante*), as well as all parties in their briefing, have treated the related theories of strict liability and breach of warranty alike for purposes of this discussion, it is unnecessary for us to address in detail the theoretical background of the breach of warranty cause of action for purposes of applying assumption of the risk to this record. (But see BAJI Nos. 9.83 (1992 rev.), 9.71 (1991 rev.).)