[No. B082569. Second Dist., Div. One. Sept. 7, 1995.]

ANITA L. ROMITO et al., Plaintiffs and Appellants, v.
RED PLASTIC COMPANY, INC., Defendant and Respondent.

**COUNSEL**

Stolpman, Krissman, Elber, Mandel & Katzman and Lynne E. Rasmussen for Plaintiffs and Appellants.

Sedgwick, Detert, Moran & Arnold, T. Emmet Thornton and Karen L. Schwartz for Defendant and Respondent.

**OPINION**

**ORTEGA, Acting P. J.**—If the technological means exist, must a manufacturer improve its product to guard against injuries resulting from unforeseeable and accidental product misuse in order to stave off potential tort

liability? We conclude as a matter of policy that despite the means to build a safer product, a manufacturer owes no duty to prevent injuries resulting from unforeseeable and accidental product misuse. We affirm summary judgment for the defendant manufacturer of a plastic skylight which lacked sufficient impact strength to bear the weight of a falling person.

## Background

This appeal involves a wrongful death action. On April 11, 1989, decedent Edward Romito, age 63, was employed as a journeyman electrician at the Santa Anita Race Track. Romito, who had 36 years of experience as an electrician, was removing television cables and wires that had been draped over the flat roof of the 4-story Club Court building. The roof was not open to the public and was separated from an abutting terrace by a low wall. The roof contained a row of plastic skylights manufactured by defendant Red Plastic Company, Inc., doing business as Dur-Red Products.

The six-foot-tall and two-hundred-twenty-eight-pound Romito was wearing two fully loaded tool belts and heavy work boots, but no safety line. As he was pulling the cable onto the roof through a small opening in a window below, the cable became tangled. He continued pulling until the cable suddenly broke free, causing him to lose his balance and stumble backwards onto a nearby plastic skylight. Romito fell through the skylight, landing 16 to 20 feet below on a concrete floor, fatally injured.

Romito's wife and two adult daughters (plaintiffs Anita L. Romito, Gloria Romito, and Louise Frazee) filed a wrongful death action against the race track owner and operator, the construction company, the roofing company, several telephone, television and cable companies, and defendant Dur-Red. The complaint alleged that Dur-Red, the only defendant left in the action (the others having settled or been dismissed), is liable in negligence and strict products liability for having failed to use an acrylic strong enough to bear the weight of a falling person.

The architect who designed the Club Court had specified, by make and model, 12 Dur-Red skylights. Defendant filled and delivered the order to the race track in July 1986, three years before the accident. The skylights, three-sixteenths of an inch thick, were five feet square with a ten-inch dome at the center, surrounded by metal frames. They met the applicable building code requirements, which neither specified an impact resistance rating for plastic skylights nor required that protective screens or railings be placed around them. Defendant, who was unfamiliar with the Club Court's design, had played no part in choosing the location of the skylights, installing them, or supervising the workers who would come near them.

Based on the above undisputed facts, defendant moved for summary adjudication of five issues: (1) falling through the skylight was an unforeseeable misuse of the product, (2) defendant owed no duty of care to the decedent, (3) defendant breached no duty of care, (4) the skylight was not defective, and (5) the skylight was not the legal cause of the accident.

In opposition to the motion, plaintiffs submitted the deposition of Russell Smith, avowedly Dur-Red's most knowledgeable employee regarding plastics technology. According to Smith, Dur-Red never considered whether its skylights can support a person's weight. Dur-Red's failure to use a stronger material in the accident skylight was not a calculated decision. Dur-Red subscribed to no trade publications regarding plastics technology and never consulted a chemical engineer or plastics specialist regarding the design, manufacture, or testing of its skylights before Romito's accident. Smith acknowledged, however, that skylights are often installed on flat roofs where people walk near them, and that he has heard of people falling through skylights and of skylights breaking.

Plaintiffs also submitted the declaration of a chemist and plastics industry consultant, James Mason. The skylight "had a Notched Izod impact strength of .34 foot pounds per inch of notch," which Mason believed was inadequate for its foreseeable use. Stronger acrylics were available for about the same price since the late 1970's. When the accident skylight was made, other manufacturers were using stronger but comparably priced materials with a 1.1 or greater impact strength, such as "Plexiglass D.R. by Rohm & Haas Corporation," (one of Dur-Red's suppliers), which would have held Romito's weight during the fall. In addition, "BASF's Luran, which had an impact strength of 5.6, over 15 times the strength" of defendant's skylight, was only "somewhat more expensive."

The trial court granted defendant's motion for summary adjudication on all issues. After concluding that no triable issues remained, the trial court entered summary judgment for defendant and this appeal followed.

## DISCUSSION

■ Summary judgment is appropriate only where no material issue of fact exists or where the record establishes as a matter of law that a cause of action asserted against a party cannot prevail. (*Nicholson* v. *Lucas* (1994) 21 Cal.App.4th 1657, 1664 [26 Cal.Rptr.2d 778].) Where, as here, "the facts are undisputed, the issue is one of law and the 'appellate court is free to draw its own conclusions of law from the undisputed facts.' [Citations.]" *Suburban Motors, Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1359 [268 Cal.Rptr. 16].)

## A. *Negligence*

"Actionable negligence is traditionally regarded as involving the following: (a) a *legal duty* to use due care; (b) a *breach* of such legal duty; (c) the breach as the *proximate or legal cause* of the resulting injury." (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60, and cases cited.)

For the purpose of deciding this appeal, we accept plaintiffs' unrefuted evidence that in 1986 other manufacturers were using, and Dur-Red could have used, a comparably priced material strong enough to bear Romito's weight. We must decide whether Dur-Red may be absolved of negligence liability, as a matter of law, for failing to build a stronger skylight.

In *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the California Supreme Court identified certain factors that should be considered in determining a landowner's duty of care: "[T]he major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]"

Applying these factors here, plaintiffs contend a triable issue of fact exists concerning the foreseeability of harm to the decedent. People have been known to fall through skylights, as Dur-Red's own employee admitted in his deposition testimony. The existence of protective devices (screens, rails, safety lines), also confirms there is some risk.

A triable issue of fact does not exist, however, merely because a jury could find the risk of a worker falling through the skylight was reasonably foreseeable. " 'The question of "duty" is decided by the court, not the jury. [Citations.]' (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 . . . .) In the typical negligence action, a determination that there is no duty giving rise to liability is essentially a conclusion that the weight of public policy warrants a departure from Civil Code section 1714."[1] (*Thai* v. *Stang* (1989) 214 Cal.App.3d 1264, 1271 [263 Cal.Rptr. 202].)

---

[1]Civil Code section 1714, subdivision (a) provides: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of

■ "[I]t is often misleadingly stated that although duty is a question of law, foreseeability is a question of fact which must be decided by the trier of fact in any case about which reasonable minds can differ [citations]. To the contrary, where it is one factor to which a court looks in defining the boundaries of 'duty,' foreseeability of the particular kind of harm is strictly a question of law when evaluated within the general context of 'whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' [Citations.]" (*Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 507, fn. 6 [238 Cal.Rptr. 436].)

■ " 'Defendant owes a duty, in the sense of a potential liability for damages, only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent, in the first instance. [Citations.]' " (*Lopez* v. *McDonald's Corp.*, *supra*, 193 Cal.App.3d at pp. 507-508.) "[T]he 'court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' (*Ballard* v. *Uribe* [1986] 41 Cal.3d [564,] 57[3], fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) Viewed in this light, the question of foreseeability in a 'duty' context is a limited one for the court, and readily contrasted with the fact-specific foreseeability questions bearing on negligence (breach of duty) and proximate causation posed to the jury or trier of fact. (*Ibid.*)" (*Lopez* v. *McDonald's Corp.*, *supra*, 193 Cal.App.3d at p. 507, fns. omitted.)

■ We employ no rigid test for measuring the degree of foreseeability necessary to impose a duty of care. "The degree of foreseeability necessary to warrant the finding of a duty will . . . vary from case to case. For example, in cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required. [Citation.]" *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 629-630 [193 Cal.Rptr. 600].)

■ Dur-Red's ability to prevent future harm is limited by its total lack of control over various external factors affecting the risk of harm. Those factors include, for example, the roof's design, the layout and installation of

ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ."

the skylights, the roof's accessibility to the public, the presence of screens or rails around the skylight, the training, skill, and safety equipment used by workers coming near the skylight, and the maintenance of the skylight and surrounding area. In this case, Dur-Red simply filled and delivered an order for 12 skylights, exercising no control over the circumstances of Romito's accidental fall through a skylight 3 years later. Romito's failure to tie himself to a safety line cannot be attributed to Dur-Red.

Even if Dur-Red had built the Club Court skylights with a 1.1 impact strength rated material and thus saved Romito from the consequences of his failure to wear a safety line and his accidental fall, the next worker coming near the same skylight might still be at risk depending on the circumstances of that accident. Perhaps even a 1.1 impact strength rated material would not save a 300-pound worker with a wheelbarrow of bricks who falls when a 40-foot scaffold collapses on top of a skylight. These and other myriad unpredictable circumstances make it necessary to impose a higher degree of foreseeability in this case as a matter of policy, lest we by judicial fiat transform skylight manufacturers into insurers of public safety.

We acknowledge the appeal of the logic that Dur-Red, in the interest of public safety, readily could have used a stronger material at no extra cost that would have saved Romito's life. This logic, however attractive in this case, fails to satisfy our broader policy concerns. Any product is potentially dangerous if accidentally misused or abused, and predicting the different ways in which accidents can occur is a task limited only by the scope of one's imagination. To require skylight manufacturers to adopt technological safety advances and recall, replace, or retrofit their older products or risk exposure to tort liability would be unreasonable in the absence of defined risks of harm.

Delineating the risks of harm to be eliminated by skylight manufacturers is a function better suited to the Legislature than the judiciary. Here, the skylight met all applicable building code requirements. It happened to be made of a weaker variety of plastic, but what if it had been made of glass? Should the manufacturer be subject to possible tort liability for having used glass rather than impact resistant plastic? Should it matter that the architect had specified glass skylights without calling for any of the available safety devices, or that the building owner had failed to maintain the glass skylight which "was so covered with dust and paper that it appeared no different from the surrounding roof[?]" (*Hatheway* v. *Industrial Acc. Com.* (1939) 13 Cal.2d 377, 379 [90 P.2d 68].)

Here, the injury resulted from an accidental fall. If we were to impose a duty of care in this situation, should the manufacturer also owe a duty of

care to a victim of crime? As the level of violence in modern society increases, even state of the art products may soon be rendered unsafe. For example, automobile windshields and home and office windows could be made of bulletproof glass but most are not. Must glass companies refuse to sell anything but bulletproof glass to auto manufacturers and construction companies simply because the stronger material exists and the risk of shootings is ever increasing in many urban neighborhoods? (Cf. *Jackson* v. *Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1842 [20 Cal.Rptr.2d 913] [discussion of the malfeasance-nonfeasance distinction in light of truck maintenance company's failure to maintain a vehicle that broke down on the highway and placed the decedent in a perilous situation].)

We conclude Dur-Red owed no duty of care to protect against the innumerable unforeseeable risks surrounding the accidental misuse of its product. Our holding finds support in a foreign jurisdiction case cited by defendant, *Jackson* v. *Tennessee Val. Authority* (M.D.Tenn. 1976) 413 F.Supp. 1050. *Jackson* was tried before a court which, acting as trier of fact, determined the plastic skylights in that case were not designed as a walking surface and were put to an abnormal use when the plaintiff intentionally walked on them. The evidence in *Jackson* indicated by a preponderance that an undamaged skylight panel would have borne the weight of a man walking carefully on top of it and that the fist-sized hole in the panel through which the plaintiff had fallen was "a major factor in his fall." (*Id.* at p. 1054.)

The *Jackson* court, as fact finder, determined it was not reasonably foreseeable "that anyone would be walking on a thin, clear, sloping, slippery plexiglass panel eighty-five feet above the ground, without first taking the precaution of being tied off to a safety line. The barrel vault skylights were obviously not intended as a walking surface, and there was no evidence at trial which indicated that IBG [the manufacturer] should have known that workmen would rely on the plexiglas panels as a walking surface. It was not suggested that the plexiglas panels, even the broken ones, were unsafe for the purpose for which they were intended, i.e., as skylights. It was the abnormal, unintended use of the plexiglas panels as a walking surface which posed the hazard to plaintiff, and defendant IBG cannot be held responsible for this unanticipated use of the skylights." (*Jackson* v. *Tennessee Val. Authority, supra,* 413 F.Supp. at pp. 1058-1059, fn. omitted.)

As a matter of law, we conclude the risk of harm to Romito was not reasonably foreseeable for reasons of policy, thus negating any duty of care. The absence of a duty of care brings this case under the primary assumption of risk concept explained in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (primary assumption of risk bars recovery

where the defendant owes no legal duty of care to the plaintiff, whereas secondary assumption of risk does not bar recovery because the defendant owes a duty of care to the plaintiff). Under *Knight*'s duty approach, a defendant's negligence liability "does not depend on the particular plaintiff's subjective knowledge or appreciation of the potential risk. . . . [¶] Rather than being dependent on the knowledge or consent of the particular plaintiff, resolution of the question of the defendant's liability in such cases turns on whether the defendant had a legal duty to avoid such conduct or to protect the plaintiff against a particular risk of harm." (*Id.*, at pp. 316-317.)

Having found as a matter of law that Dur-Red had no legal duty to protect Romito against his unforeseeable and accidental misuse of the skylight, we conclude plaintiffs' negligence cause of action is barred.

### B. *Strict Products Liability*

■ "[A] product may be found defective in design, so as to subject a manufacturer to strict liability for resulting injuries, under either of two alternative tests. First, a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Second, a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 432 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].)

■ Under the first prong of *Barker*'s defective design test, the skylight was not defective. A skylight is not being used in an intended or reasonably foreseeable manner when a worker accidentally steps on and falls through it, as discussed in part A above. Accordingly, there is no triable issue of fact regarding the first prong of *Barker*'s defective design test. (Cf. *Soule* v. *General Motors. Corp.* (1994) 8 Cal.4th 548, 566-567 [34 Cal.Rptr.2d 607, 882 P.2d 298], in which the first prong of *Barker*'s test was held inapplicable due to the complex nature of the plaintiff's defective design theory.)

The second prong of the design defect test is causation, which involves the same policy considerations that we relied upon to negate a duty of care. (Cf. *Jackson* v. *Ryder Truck Rental, Inc.*, *supra*, 16 Cal.App.4th at pp. 1846-1848.) Although in *Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041 [1 Cal.Rptr.2d 913, 819 P.2d 872], our Supreme Court disapproved the standard proximate cause instruction (former BAJI No. 3.75) in favor of the

substantial factor test of causation, it did not eliminate the "normative or evaluative element" of proximate cause which asks the *policy* question of whether the defendant should be held liable for negligently causing the plaintiff's injury. (*Mitchell* v. *Gonzales, supra,* 54 Cal.3d at p. 1056 (dis. opn. of Kennard, J.); *Jackson* v. *Ryder Truck Rental, Inc., supra,* 16 Cal.App.4th at p. 1847.)

Whether Dur-Red's failure to use a stronger material was a substantial factor in bringing about Romito's injury is irrelevant if Dur-Red owed no duty toward Romito due to the unforeseeability of the risk of harm. Having concluded no duty was owed, we need not discuss whether Dur-Red's conduct was a substantial factor in bringing about the injury.

Our conclusion is consistent with the reasoning in *Milwaukee Electric Tool Corp.* v. *Superior Court* (1993) 15 Cal.App.4th 547 [19 Cal.Rptr.2d 24], which held that *Knight* v. *Jewett, supra,* 3 Cal.4th 296, applies to product liability actions. In *Milwaukee,* the plaintiff, an experienced tradesman, was injured while using a heavy-duty, variable-speed drill made by the defendant. The plaintiff was standing near the top of a ladder when the drill locked up, exerting a sudden rotational force that flung the plaintiff off the ladder and onto the ground, injured.

Although its analysis of *Knight* led the *Milwaukee* court to conclude a duty of care was owed by the drill manufacturer in that case (*Milwaukee Electric Tool Corp.* v. *Superior Court, supra,* 15 Cal.App.4th at p. 565), we have found for distinct public policy reasons that no duty of care was owed by the skylight manufacturer in this case. The plaintiff's injury in *Milwaukee* occurred while he was using the drill in a reasonably foreseeable manner. The *Milwaukee* court thus concluded that due to the existence of a duty of care, the "secondary assumption of the risk theory is merged into comparative fault. [Citation.]" (*Ibid.*; see *Davis* v. *Gaschler* (1992) 11 Cal.App.4th 1392, 1398 [14 Cal.Rptr.2d 679].) Here, on the other hand, the decedent's injury occurred as he accidentally fell or stepped backward onto the skylight, having lost his balance while tugging on a tangled cable. Romito was not "using" the skylight in the same manner that one "uses" a tool or device. On the contrary, Romito was presumably trying to avoid the skylight but was unable to do so due to his momentum and the force of his fall.

For the policy reasons discussed in part A, defendant owed no legal duty to protect against Romito's unforeseeable and accidental misuse of the skylight. Accordingly, plaintiffs' product liability cause of action is also barred.

## DISPOSITION

We affirm the summary judgment. Defendant is awarded costs.

Vogel (Miriam A.), J., and Masterson, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 22, 1995.