Filed 12/14/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BETHANY MODISETTE et al., | H044811 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 16CV304364) |
| v. | |
| APPLE INC., | |
| Defendant and Respondent. | |

Bethany and James Modisette, along with their daughter Isabella, sued Apple Inc. after they were seriously injured, and their daughter Moriah was killed, when a driver using the FaceTime application on his iPhone crashed into their car on a Texas highway. The trial court sustained Apple's demurrer to the Modisettes' first amended complaint and dismissed the action. The Modisettes appeal from the judgment.

We determine that the trial court properly sustained the demurrer without leave to amend. Regarding the Modisettes' negligence claims, we conclude that Apple did not owe the Modisettes a duty of care. We also determine that the Modisettes cannot establish that Apple's design of the iPhone constituted a proximate cause of the injuries they suffered, a necessary element of their remaining claims. Accordingly, we affirm the judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On December 24, 2014, Bethany, James, Isabella, and Moriah Modisette were traveling in their family car on Interstate 35W in Denton County, Texas.[1] Garrett Wilhelm was also driving on the interstate, and, while driving, was using the FaceTime application on his Apple iPhone 6 Plus. Traveling at highway speed, Wilhelm crashed into the Modisettes' car, which had stopped due to police activity. The accident caused severe physical and emotional injuries to each of the Modisettes, and Moriah, aged five, subsequently died at the hospital. Wilhelm told the police that he was using FaceTime at the time of the crash. Police found Wilhelm's iPhone at the scene with FaceTime still activated.

The Modisettes sued Apple Inc., which has its principal place of business in Santa Clara County. The first amended complaint alleged causes of action for general and gross negligence, negligent and strict products liability, negligent and intentional infliction of emotional distress, loss of consortium, and public nuisance. The Modisettes alleged that the car accident "occurred . . . when a driver, distracted while using the 'FaceTime' application on an Apple iPhone 6 Plus during operation of his motor vehicle, collided at highway speed with [their] stationary motor vehicle and caused severe physical and emotional injuries to [them]," and that Apple's failure to design the iPhone "to 'lock out' the ability of drivers to utilize the 'FaceTime' application on the Apple iPhone while driving a motor vehicle, . . . resulted in the[ir] injuries." The complaint incorporated by reference the "body of studies and data that demonstrate the compulsive/addictive nature of smartphone use."

The Modisettes alleged that Apple had wrongfully failed to implement in the iPhone 6 Plus a safer alternative design that would have automatically prevented drivers from utilizing FaceTime while driving at highway speed (lockout technology). The

---

[1] The facts are taken from the first amended complaint.

2

Modisettes also alleged that Apple had failed to warn users that the iPhone "was likely to be dangerous when used or misused in a reasonably foreseeable manner." The Modisettes alleged that Apple "had a legal duty to . . . use due care in the design, manufacture, and sale of its iPhone 6 Plus" and that Apple had "breached that duty by failing to use reasonable care to design and manufacture [the phone] with the safer, alternative 'lock-out' technology it had already developed to prevent the use of its pre-installed 'FaceTime' application during a driver's operation of a motor vehicle."

According to the first amended complaint, Apple applied for a patent for its lockout technology in December 2008. The patent application stated that the technology was designed to " 'disable the ability of a handheld computing device to perform certain functions, such as texting, while one is driving.' " (Italics omitted.) The patent for the lockout technology was issued to Apple in April 2014. Apple released the iPhone 6 Plus on September 9, 2014. FaceTime was a "factory-installed, non-optional application[] on the iPhone 6 Plus."

The Modisettes alleged that Apple knew or should have known of the risks caused by the use of the iPhone while driving and quoted portions of Apple's 2008 patent application for the lockout technology. For example, the first amended complaint alleged that Apple stated in the application that " '[t]exting while driving has become a major concern . . . . An April 2006 study found that 80 percent of auto accidents are caused by distractions such as applying makeup, eating, and text messaging on handheld computing devices.' " Attached as an exhibit to the first amended complaint was a notice of proposed federal guidelines by the National Highway Traffic Safety Administration issued on November 21, 2016. The proposed federal guidelines stated that driver "distractions can come from electronic devices, such as navigation systems and cell/smartphones, and from more conventional activities, such as viewing sights or events external to the vehicle, interacting with passengers, and/or eating." The proposed federal guidelines included statistics on the prevalence of accidents in the United States

3

involving distracted drivers from 2007-2014. For example, in 2013, there were 71,000 "distraction-affected non-fatal crashes involving the use of a cell phone," which constituted 8 percent of all distraction-affected non-fatal crashes and resulted in 34,000 people injured. That same year, there were 411 "distraction-affected fatal crashes involving the use of a cell phone," which constituted 14 percent of fatal "distraction-affected crashes" and resulted in 455 fatalities. The proposed federal guidelines made recommendations to "reduce the potential for unsafe driver distraction" from electronic devices, but acknowledged that "it remains the driver's responsibility to ensure the safe operation of the vehicle and to comply with all state traffic laws. This includes, but is not limited to laws that ban texting and/or use of hand-held devices while driving."

The trial court sustained Apple's demurrer to the first amended complaint without leave to amend and dismissed the action on May 8, 2017. The court found that "each cause of action . . . fails, as a matter of law, to establish either the element of duty or of causation." The Modisettes timely appealed.

## II. DISCUSSION

The Modisettes contend that the trial court erroneously found Apple did not owe them a duty of care, asserting that the risk created by Apple's failure to implement the lockout technology was foreseeable and unreasonable. The Modisettes also argue that the trial court inappropriately decided causation on demurrer, asserting that Apple's conduct and the resulting defect in Wilhelm's phone combined with Wilhelm's conduct to cause the collision. The Modisettes seek to amend their complaint by adding allegations that Apple recently implemented a design change that allows iPhone users to block notifications while driving.

We conclude that the Modisettes' claims for general and gross negligence, negligent products liability, negligent infliction of emotional distress, and public nuisance fail because Apple did not owe the Modisettes a duty of care. We base this determination on two considerations: first, the tenuous connection between the Modisettes' injuries and

4

Apple's design of the iPhone 6 Plus without lockout technology; and, second, the burden to Apple and corresponding consequences to the community that would flow from such a duty. We also determine that the Modisettes' claims for strict products liability, intentional infliction of emotional distress, and loss of consortium fail for lack of proximate cause.[2] Accordingly, we affirm the judgment.

A. *Standard of Review*

"We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law." (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1190 (*Thompson*).) "Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly, we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law."[3] (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 (*Moore*), internal citations omitted.) "We do not review the validity of the trial court's reasoning, and therefore will affirm its ruling if it was correct on any theory." (*Thompson*, *supra*, at p. 1190, internal citation and quotation marks omitted; see also *Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

---

[2] The first amended complaint included failure to warn allegations in its negligence and product liability claims. The Modisettes do not appear to contest the trial court's dismissal of the failure to warn aspect of their claims as they do not raise the issue here by providing either analysis or argument. (*Associated Builders and Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2.) Thus, any appellate claim the Modisettes may have had arising from the failure to warn allegations has been forfeited. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 793, fn. 2.)

[3] We also accept facts appearing in exhibits to the complaint as true "and, if contrary to the allegations in the pleading, . . . give[] [them] precedence." (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191.)

5

B. *Duty of Care*

"A plaintiff in any negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1142 (*Kesner*), internal quotation marks omitted.)  Duty is an essential element of the Modisettes' claims against Apple for general and gross negligence, negligent products liability, negligent infliction of emotional distress, and public nuisance.  (See *Ibid.* [negligence]; *Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 640 [gross negligence]; *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477-479 (*Merrill*) [negligent products liability]; *Moon v. Guardian Postacute Services, Inc.* (2002) 95 Cal.App.4th 1005, 1009 [negligent infliction of emotional distress]; *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988 [public nuisance].)  "[T]he existence of duty is a pure question of law." (*O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 363 (*O'Neil*).)

"California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.  (Civ. Code, § 1714, subd. (a).)"[4] (*Kesner*, *supra*, 1 Cal.5th at p. 1142, internal quotation marks omitted.)  However, "[c]ourts . . . invoke[ ] the concept of duty to limit generally the otherwise potentially infinite liability which would follow from every negligent act . . . .  The conclusion that a defendant did not have a duty constitutes a determination by the court that public policy concerns outweigh, for a particular category of cases, the broad principle enacted by the Legislature that one's failure to exercise ordinary care incurs liability for all the harms that result." (*Kesner*, *supra*, at p. 1143, internal citations and quotation marks omitted.)

---

[4] Civil Code section 1714, subdivision (a) provides in relevant part: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

"[I]n the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where clearly supported by public policy." (*Ibid.*, internal quotation marks omitted.) Court-crafted exceptions to the duty rule are appropriate "when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases." (*Id*. at pp. 1143-1144, internal quotation marks omitted.) Whether a duty exists does not depend on the facts of a particular case; instead, "analysis of duty occurs at a higher level of generality." (*Id.* at p. 1144.)

In *Rowland v. Christian*, the California Supreme Court articulated the factors to be considered when determining whether public policy supports the creation of an exception to the statutory presumption of duty set forth in Civil Code section 1714.[5] (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113 (*Rowland*).) The central factors identified by *Rowland* are "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.* at p. 113.)

The Modisettes alleged that Apple knew or should have known of the risk of harm created by the use of an iPhone while driving and supported that allegation by quoting portions of Apple's 2008 patent application for its lockout technology. The patent application stated that " '[t]exting while driving has become a major concern,' " and noted that " '[a]n April 2006 study found that 80 percent of auto accidents are caused by distractions such as applying makeup, eating, and text messaging on handheld computing devices.' " The proposed federal guidelines attached as an exhibit to the first amended

---

[5] All further statutory references are to the Civil Code unless otherwise indicated.

complaint included statistics about the prevalence of "distraction-affected crashes" involving the use of a cell phone that occurred in the United States from 2007-2014.

Accepting the Modisettes' non-conclusory allegations as true, we determine that *Rowland*'s foreseeability factor weighs in favor of imposing a duty of care on Apple because "the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced . . . ." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 573, fn. 6.) However, even if it were foreseeable that cell-phone use by drivers would result in accidents, "foreseeability is not synonymous with duty; nor is it a substitute." (*O'Neil*, *supra*, 53 Cal.4th at p. 364.) "[T]here are numerous circumstances . . . in which a given injury may be 'foreseeable' in the fact-specific sense in which we allow juries to consider that question, but . . . the 'foreseeability' examination called for under a duty analysis pursuant to [*Rowland*] is a very different normative inquiry." (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 476 (*Parsons*).) As explained further below, we ultimately conclude that this normative inquiry supports finding an exception to the default duty of care set out in section 1714.

We agree with the Modisettes that some of the other *Rowland* factors also weigh in favor of finding a duty on the part of Apple,[6] including the certainty that the Modisettes suffered injury,[7] the policy of preventing future harm, and "moral blame."[8]

---

[6] Neither party discusses the prevalence of insurance in this context nor is insurance referenced in the first amended complaint. For this reason, we do not incorporate this consideration in our analysis.

[7] The certainty of injury factor "has been noted primarily, if not exclusively, when the only claimed injury is an intangible harm such as emotional distress." (*Kesner supra*, 1 Cal.5th at p. 1148, internal quotation marks omitted.) As the Modisettes' claims concern potential injuries suffered in car accidents, and in light of the severe injuries they actually suffered in this case, their injuries are certain and compensable.

[8] Courts have relied on moral blame to find a duty "in instances where the plaintiffs are particularly powerless or unsophisticated compared to the defendants or where the defendants exercised greater control over the risks at issue." (*Kesner*, *supra*, 1 Cal.5th at p. 1151.)

8

Nevertheless, the remaining *Rowland* factors weigh more strongly against a finding of duty. In particular, we conclude, first, that there was not a "close" connection between Apple's conduct and the Modisettes' injuries and, second, that "the extent of the burden to [Apple] and consequences to the community of imposing a duty to exercise care with resulting liability for breach" would be too great if a duty were recognized. (*Rowland*, *supra*, 69 Cal.2d at p. 113.)

Turning to the *Rowland* factor examining "the closeness of the connection between the defendant's conduct and the injury suffered" (*Kesner*, *supra*, 1 Cal.5th at p. 1148, internal quotation marks omitted), we agree with the Modisettes that the involvement of a third party (the driver Wilhelm) in the accident does not, standing alone, preclude a duty of care on the part of Apple. "[O]ne's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third person." (*Ibid.*, internal quotation marks omitted) However, we find unpersuasive the Modisettes' contention that case law examining third-party conduct supports such a duty here given the tenuous connection between Apple's design of the iPhone and the Modisettes' injuries.

In cases where courts have found a sufficiently close connection to warrant the recognition of a duty of care notwithstanding the involvement of a third party, the relationship between the defendant's actions and the resulting harm was much more direct. For example, in *Kesner*, *supra*, 1 Cal.5th at page 1141, the plaintiffs were family members and current or former cohabitants of workers exposed to asbestos at defendants' workplaces. The plaintiffs contracted cancer from their exposure to asbestos particles that were carried home on the workers' clothing and other possessions. (*Ibid.*) The court found that the defendants' "failure to control the movement of asbestos fibers" and to "mitigate known risks associated with the use of asbestos" created a foreseeable risk of

9

harm to plaintiffs and that there was a close connection between the defendants' conduct and the harm. (*Id.* at pp. 1145-1146, 1148-1149.) "An employee's role as a vector in bringing asbestos fibers into his or her home is derived from the employer's or property owner's failure to control or limit exposure in the workplace." (*Id.* at p. 1148.) However, the court recognized the limits of the duty owed. The court held that the employers' duty extended "only to members of a worker's household, i.e., persons who live with the worker and are thus foreseeably in close and sustained contact with the worker over a significant period of time." (*Id.* at p. 1154.) The court, by contrast, found no duty by the employers toward others who may have come into contact with employees carrying asbestos fibers on their person. (*Id.* at p. 1155.)

In *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 708, a police officer motioned a speeding motorist to stop in the center median of a highway. The passengers in the stopped car were then seriously injured when the vehicle was hit by a third party. (*Id.* at p. 709.) The court held that "a law enforcement officer, in directing a traffic violator to stop in a particular location, has a legal duty to use reasonable care for the safety of the persons in the stopped vehicle and to exercise his or her authority in a manner that does not expose such persons to an unreasonable risk of harm." (*Id.* at p. 707.) The court emphasized that the negligence claim was based on the particular conduct of the officer: "[The officer's] affirmative conduct itself, in directing [the driver] to stop the Camry in the center median of the freeway, placed plaintiffs in a dangerous position and created a serious risk of harm to which they otherwise would not have been exposed." (*Id.* at pp. 716-717.)

In both of those cases, the defendants' conduct, whether it was the unsafe use of asbestos in *Kesner* or the stopping of a motorist in the center median in *Lugtu*, directly put the plaintiffs in danger; the plaintiffs' harm was closely tied to the defendants' actions. Apple's design of the iPhone, in contrast, simply made Wilhelm's use of the phone while driving possible, as does the creator of any product (such as a map, a radio, a

10

hot cup of coffee, or makeup) that could foreseeably distract a driver using the product while driving.

Unlike the conduct in *Kesner* and *Lugtu,* Apple's design of the iPhone did not put the danger in play. The Modisettes' assertion in their opening brief that "Wilhelm's role and conduct as a distracted driver is derivative of, and thus closely connected to, Apple's failure to take appropriate steps to at least limit the ability of its iPhone to create and enable such distractions" only highlights the attenuation between Apple's design of the iPhone and the Modisettes' injuries. This attenuation significantly weakens their claim of duty on the part of Apple. (See *Wawanesa Mut. Ins. Co. v. Matlock* (1997) 60 Cal.App.4th 583, 588-589 (*Matlock*) ["the concatenation between [defendant's] initial act of giving [minor] a packet of cigarettes and the later fire is simply too attenuated to show the fire was reasonably within the scope of the risk created by the initial act"].)

For the Modisettes to be injured, they had to stop on a highway due to police activity; Wilhelm had to choose to use his iPhone while driving in a manner that caused him to fail to see that the Modisettes had stopped; and Wilhelm had to hit the Modisettes' car with his car, an object heavy enough to cause the Modisettes' severe injuries. It was Wilhelm's conduct of utilizing FaceTime while driving at highway speed that directly placed the Modisettes in danger. Nothing that Apple did induced Wilhelm's reckless driving.[9]

The Modisettes employ the principles articulated in *Kesner* to try to demonstrate a sufficiently close connection between Apple's conduct and their harm, arguing that "[i]t is of no legal consequence that it was [a third party] who collided with [them]." The

_____

[9] The first amended complaint includes allegations regarding teenagers' use of cell phones while driving and references a number of studies involving smartphone addiction among young adults and young drivers. The first amended complaint does not include Wilhelm's age at the time of the crash. Thus, we conclude that these allegations are not relevant to our analysis. Even if the complaint did allege Wilhelm's age, the allegations would not change our duty analysis. (See e.g., *Matlock*, *supra*, 60 Cal.App.4th at p. 589.)

11

Modisettes highlight *Kesner*'s characterization of "the gravamen of plaintiffs' claims" there as the "defendants['] fail[ure] to mitigate known risks associated with the use of asbestos," and quote the court's determinations that "[i]ncreased risk of mesothelioma is a characteristic harm that makes the use of asbestos-containing materials unreasonably dangerous in the absence of protective measures" and that "[a]n employee's return home at the end of the workday is not an unusual occurrence, but rather a baseline assumption that can be made about employees' behavior" (*Kesner*, *supra*, 1 Cal.5th at p. 1149), to draw an analogy here. However, it was the defendants' own use of asbestos in *Kesner* that created the risk of harm (*id.* at p. 1140), which is necessarily a closer connection between conduct and harm than Apple's design of the iPhone and the Modisettes' injuries (see *Bailey v. Estate of Carroll Jett* (W.D.N.C., Jan. 31, 2011, Civ. No. 1:110cv144) 2011 WL 336133, *4 ["simply placing a product in the stream of commerce, without more, is insufficient to create a legal duty on the part of a seller"]).[10] Nor are we willing to make "a baseline assumption" that iPhone owners will ordinarily use their phones in a dangerous manner while driving. (*Kesner*, *supra*, at p. 1149; see *Estate of Doyle v. Sprint/Nextel Corporation* (2010) 248 P.3d 947, 951 ["It is not reasonable to anticipate injury every time a person uses a cellular phone while driving."].)

*Lompoc Unified School Dist. v. Superior Court* (1993) 20 Cal.App.4th 1688 (*Lompoc Unified*) is instructive. There, the plaintiff bicycle rider was injured by a motorist who struck him when she became distracted by athletic events occurring on property bordering the roadway, and the plaintiff sued the landowner. (*Id.* at p. 1691.) The court disagreed with the plaintiff's contention that an occupier of real property owed a duty of care not to conduct activities that would distract passing motorists. (*Id.* at p. 1694.) "[T]he occupier has no liability for injuries caused by the motorist who is not

---

[10] The California Rules of Court do not restrict citation to unpublished federal opinions. (See Cal. Rules of Court, rule 8.1115; *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18.)

12

paying attention to where he or she is going.  Rather, it is the motorist who has the duty to exercise reasonable care at all times, to be alert to potential dangers, and to not permit his or her attention to be so distracted by an interesting sight that such would interfere with the safe operation of a motor vehicle." (*Ibid.*)

The Modisettes argue that *Lompoc Unified* is distinguishable because it was based on a limitation to a property occupier's "duty to exercise ordinary care in the use and management of his or her land," which does not "[n]ormally . . . extend to persons outside the land, e.g., on adjacent land or on the highway." (*Lompoc Unified*, *supra*, 20 Cal.App.4th at p. 1693.)  While we agree that *Lompoc Unified* recognized that limitation, its holding was premised on case law from other jurisdictions determining that "an occupier has no legal duty to provide a distraction barrier to prevent passing motorists from seeing or hearing what is occurring upon the land" because it is the motorist's "duty to exercise reasonable care at all times . . . ." (*Id.* at p. 1694.)  *Lompoc Unified* "adopt[ed] these holdings as the rule in California." (*Ibid.*)

In addition to concluding that the connection between the Modisettes' injuries and Apple's design of the iPhone weighs against a duty of care on the part of Apple, we determine that the burden a contrary conclusion would place upon cell-phone manufacturers and the consequences to the community strongly militate toward finding that Apple had no duty to the Modisettes even if their injuries were foreseeable.  "A duty of care will not be held to exist even as to foreseeable injuries . . . where the social utility of the activity concerned is so great, and avoidance of the injuries so burdensome to society, as to outweigh the compensatory and cost-internalization values of negligence liability." (*Kesner*, *supra*, 1 Cal.5th at p. 1150, internal quotation marks omitted.)  A foreseeable harm does not " 'standing alone'[ ] impose . . . a duty to guard against injuries to [a] plaintiff." (*Parsons*, *supra*, 15 Cal.4th at p. 476.)  "As we have observed, social policy must at some point intervene to delimit liability even for foreseeable injury." (*Ibid.*, internal quotation marks omitted.)

A court will craft an exception to the duty of care even for foreseeable harms if "allowing the possibility of liability would result in such significant social burdens that the law should not recognize such claims." (*Kesner*, *supra*, 1 Cal.5th at p. 1144.) "[A]ny duty rule will necessarily exclude some individuals who, as a causal matter, were harmed by the conduct of potential defendants." (*Id.* at p. 1155.) Although we determine based on the allegations in the first amended complaint that it was foreseeable that Apple's design of the iPhone 6 Plus without the lockout technology could result in a car accident, we conclude that strong public policy considerations dictate against recognizing a duty of care.

Whether cell-phone manufacturers have a duty to design cell phones in a manner that applications like FaceTime cannot be accessed while users are driving appears to be an issue of first impression in California, but courts in other jurisdictions facing similar issues have determined there to be no duty of care. For example, in *Williams v. Cingular Wireless* (2004) 809 N.E.2d 473, 475, 478, which involved a negligence suit against a company that furnished a cell phone to a driver who was using the phone when a collision occurred, the court determined that it would "not make sound public policy to impose a duty" even though cell-phone use by a driver has "some degree of foreseeability . . . ." The court explained that although "[i]t is foreseeable to some extent that there will be drivers who eat, apply make up, or look at a map while driving and that some of those drivers will be involved in car accidents because of the resulting distraction . . . , it would be unreasonable to find it sound public policy to impose a duty on the restaurant or cosmetic manufacturer or map designer to prevent such accidents. It is the driver's responsibility to drive with due care." (*Id.* at p. 478.) The court observed that "[t]o place a duty on [the seller] to stop selling cellular phones because they might be involved in a car accident would be akin to making a car manufacturer stop selling otherwise safe cars because the car might be negligently used in such a way that it causes an accident." (*Ibid.*; see also *Durkee v. C.H. Robinson Worldwide, Inc.* (2011) 765

14

F.Supp.2d 742, 749 [declining to find in-truck texting-system manufacturer had duty to design system to block texts unless truck was stopped, in part because "no product that would potentially distract a driver could be marketed"].)

In addition to cases from other jurisdictions, we look to public policy in California, as articulated in legislation and similar statements of public policy. While courts have reasoned that "internalizing the cost of injuries caused by a particular behavior will induce changes in that behavior to make it safer," they have also recognized "[t]hat [such a] consideration may be outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct . . . ." (*Kesner*, *supra*, 1 Cal.5th at p. 1150.) In *Kesner*, the Supreme Court's finding of duty on the part of employers to cohabitants of individuals who had suffered longtime, repeated exposure to asbestos relied in part upon "a strong public policy limiting or forbidding the use of asbestos." (*Id.* at p. 1151.)

The legal landscape with respect to the use of cell phones is distinctly different. "There are 396 million cell phone service accounts in the United States—for a Nation of 326 million people." (*Carpenter v. U.S.* (2018) __ U.S. __ [138 S.Ct. 2206, 2211, 201 L.Ed.2d 507] (*Carpenter*).) The United States Supreme Court has described cell phones as "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." (*Riley v. California* (2014) __ U.S. __ [134 S.Ct. 2473, 2484, 189 L.Ed.2d 430].) It is not only foreseeable that millions of people will have their cell phones in their cars—it is almost a certainty. "[N]early three-quarters of smart phone users report being within five feet of their phones most of the time"; "[i]ndividuals . . . compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." (*Carpenter*, *supra*, 138 S.Ct. at p. 2218, internal citation and quotation marks omitted.)

15

With respect to the use of cell phones while driving, the Legislature has elected not to ban all cell-phone use by drivers in California, choosing to allow cell-phone use while driving that is "voice-operated" and "hands-free." (Veh. Code, §§ 23123, subd. (a), 23123.5, subd. (a).) It has also permitted drivers to use non-voice-operated, non-hands-free cell phones "for emergency purposes" (Veh. Code, § 23123, subd. (c)), and to use them when the phone "is mounted on a vehicle's windshield . . . or . . . a vehicle's dashboard" and the driver can "activate or deactivate a feature or function" of the phone "with the motion of a single swipe or tap of the driver's finger" (Veh. Code, § 23123.5, subd. (c)(1)-(2); see also *id.* at subd. (b) [exempting "manufacturer-installed systems . . . embedded in the vehicle"]).[11] California statutes, therefore, indicate the Legislature's approval of certain cell-phone use by drivers and its seeming recognition that "[c]ellular phones are safely used in many different contexts every day. Indeed, many drivers use cellular phones safely for personal and business calls, as well as to report traffic emergencies. Encouraging drivers to report accidents, dangerous road conditions, or other similar threats to authorities on their cellular phones is in the public's interest." (*Williams*, *supra*, 809 N.E.2d at p. 479.)

These expressions of public policy are significant because the proper focus for "duty analysis is forward-looking, and the most relevant burden is the cost to the defendants of upholding, not violating, the duty of ordinary care." (*Kesner*, *supra*, 1 Cal.5th at p. 1152.) "[W]hen addressing conduct on the part of a defendant that is 'deliberative, and . . . undertaken to promote a chosen goal, . . . [c]hief among the factors which must be considered is the social value of the interest which the actor is seeking to advance.' " (*Parsons*, *supra*, 15 Cal.4th at p. 473, italics omitted.) The Modisettes' complaint alleges a duty that, at its core, may preclude cellular-phone manufacturers from

---

[11] Texas laws are even more permissive. (See Tex. Transportation Code, §§ 545.425, 545.4251.)

16

allowing the use of phones while driving, notwithstanding California law that expressly permits such uses under certain circumstances.

The Modisettes urge us to distinguish smartphones like the iPhone from other products that motorists may use while driving based upon the "body of studies and data that demonstrative the compulsive/addictive nature of smartphone use." Even accepting this contention as true, it does not persuade us.[12] All of the studies cited by the Modisettes in their complaint were published prior to or in 2016. In 2016, the California Legislature added a provision to the Vehicle Code that allows a driver to "activate or deactivate a feature or function of the handheld wireless telephone or wireless communications device with the motion of a single swipe or tap of the driver's finger" while the "driver is operating the vehicle." (Vehicle Code, § 23123.5, subd. (c)(2), added by Stats. 2016, ch. 660, § 2.) By referencing a "swipe or tap" (*ibid.*), the statute implicitly approves accessing smartphones while driving under some circumstances.[13] The Modisettes' complaint does not allege that Apple designed the iPhone to be particularly addictive to drivers compared to other smartphones, and the Legislature has rejected the Modisettes' implicit argument that smartphones may never be used safely by drivers.

---

[12] At oral argument, Apple stated that, given the procedural posture of this case, we should accept as true the contention that smartphones are addictive. Absent this concession, we may have considered the Modisettes' contention that "[a]n iPhone operates on a Variable Ratio Schedule of Reinforcement, similar to a slot machine," to fall within the category of "contentions, deductions, or conclusions of fact or law" that we do not accept as true for review of an order sustaining a demurrer. (*Moore*, *supra*, 51 Cal.3d at p. 125.)

[13] The statute also requires that "[t]he handheld wireless telephone or electronic wireless communications device is mounted on a vehicle's windshield in the same manner a portable Global Positioning System (GPS) is mounted pursuant to paragraph (12) of subdivision (b) of Section 26708 or is mounted on or affixed to a vehicle's dashboard or center console in a manner that does not hinder the driver's view of the road." (Veh. Code, § 23123.5, subd. (c)(1).)

17

The facts and documents cited by the Modisettes about "distracted driving" confirm how broadly they construe the scope of the duty owed to them by Apple. Essentially, the Modisettes argue that cell-phone manufacturers owe a duty to all individuals injured by drivers who were distracted by using the phones while driving if the cell-phone manufacturer had available the technology to disable use of the phone while the user is driving. Notwithstanding the broad brush of section 1714, we are not persuaded that California law imposes a duty on the manufacturer of a cell phone to design it in such a manner that a user is incapable of using it while driving. Given the complex public policy considerations involved in such a calculus, and the potentially sweeping implications of finding a duty by Apple here, we conclude that policy considerations dictate finding as a matter of law an exception to the general duty of care. We also observe that our conclusion constitutes a clear, bright-line rule applicable to a general class of cases that the Supreme Court has described as appropriate for a court-created exception to the general duty of care. (*Kesner*, *supra*, 1 Cal.5th at p. 1144.)

The facts in this case are tragic. We have great sympathy for the Modisettes, who suffered severe injuries through no apparent fault of their own. Nevertheless, for the reasons stated above, we conclude that Apple owed no duty of care to the Modisettes to design the iPhone 6 Plus with lockout technology. The trial court properly sustained Apple's demurrer to the negligence-based claims for the injuries the Modisettes suffered in the car accident with Wilhelm.

C. *Proximate Causation*

The Modisettes' claims against Apple for strict products liability, intentional infliction of emotional distress, and loss of consortium do not require a showing that Apple owed the Modisettes a duty of care, but they do contain the necessary element of causation. (See *Merrill*, *supra*, 26 Cal.4th at p. 479 [strict products liability]; *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050 [intentional infliction of emotional distress]; *LeFiell Manufacturing Co. v. Superior Court* (2012) 55 Cal.4th 275, 284-285 [loss of consortium].) We conclude that the tenuous connection between Apple's conduct and the Modisettes' injuries bars a finding of proximate causation.

"Traditionally, the law has asked whether defendant's conduct was the 'proximate' cause of injury." (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1847.) "Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint. . . . Nevertheless, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 353 (*State Hospitals*), internal quotation marks omitted.)

"[P]roximate cause has two aspects. One is cause in fact. An act is a cause in fact if it is a necessary antecedent of an event. This is sometimes referred to as but-for causation." (*State Hospitals*, *supra*, 61 Cal.4th at p. 352, citation and internal quotation marks omitted.) To establish but-for causation, the plaintiff must "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of [plaintiff's harm]."[14] (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1243 (*Viner*), internal quotation marks omitted.)

---

[14] The parties argue whether Apple's conduct was a "substantial factor" in causing the Modisettes' injuries. The California Supreme Court has recently stated, however, that the substantial factor test applies "where concurrent independent causes contribute to an

19

The first amended complaint alleged that the accident "occurred . . . when a driver, distracted while using the 'FaceTime' application on an Apple iPhone 6 Plus during operation of his motor vehicle, collided at highway speed with [the Modisettes'] stationary motor vehicle and caused severe physical and emotional injuries to [them]," and that Apple's failure to design the iPhone "to 'lock out' the ability of drivers to utilize the 'FaceTime' application . . . while driving a motor vehicle, . . . resulted in the[ir] injuries." Taking the Modisettes' properly pleaded allegations as true, it appears to us that the first amended complaint pleaded facts sufficient to establish that Apple's design of the iPhone 6 Plus without its patented lockout technology was a cause in fact of the Modisettes' injuries because it was "a necessary antecedent" of the accident. (*State Hospitals*, *supra*, 61 Cal.4th at p. 352.)

"To simply say, however, that the defendant's conduct was a necessary antecedent of the injury does not resolve the question of whether the defendant should be liable." (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315 (*PPG Industries*).) As with the test for duty in negligence actions, "[t]he second aspect of proximate cause focuses on public policy considerations. Because the purported [factual] causes of an event may be traced back to the dawn of humanity, the law has imposed additional limitations on liability other than simple causality. These additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy. Thus, proximate cause is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." (*State Hospitals*, *supra*, 61

injury." (*State Hospitals*, *supra*, 61 Cal.4th at p. 352, fn. 12.) Concurrent independent causes "are multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm." (*Viner*, *supra*, 30 Cal.4th at p. 1240.) Because this case does not involve concurrent independent causes, "the 'but for' test governs questions of factual causation." (*State Hospitals*, *supra*, at p. 352, fn. 12; see also *Viner*, *supra*, at pp. 1239-1241.)

Cal.4th at p. 353, internal citations and quotation marks omitted; see also *Romito v. Red Plastic Co.* (1995) 38 Cal.App.4th 59, 69-70.)  Both Witkin and the Restatement of Torts frame this aspect of proximate cause as "scope of liability."  (6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, §§ 1331, 1336; Rest.3d Torts, § 29.)  The extent or scope of a defendant's liability is a question of law.  (*Mosley v. Arden Farms Co.* (1945) 26 Cal.2d 213, 222 (*Mosley*) (conc. opn. of Traynor, J.); see also *PPG Industries*, *supra*, at pp. 315-316.)

"As a matter of practical necessity, legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay."  (*Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 68 (*Kumaraperu*), internal quotation marks omitted.)  Although Apple's manufacture of the iPhone 6 Plus without the lockout technology was a necessary antecedent of the Modisettes' injuries (as was the police activity that slowed traffic on the interstate that day), those injuries were not a result of Apple's conduct.  Rather, Wilhelm caused the Modisettes' injuries when he crashed into their car while he willingly diverted his attention from the highway.  (See *Durkee*, *supra*, 765 F.Supp.2d at p. 750 ["[t]he alleged accident in this case was caused by the driver's inattention, not any element of the design or manufacture of the [in-truck texting] system that has been alleged"].)  In a similar case in Texas, the trial court concluded that "a real risk of injury did not materialize until [the driver] neglected her duty to safely operate her vehicle by diverting her attention from the roadway.  In that sense, Apple's failure to configure the iPhone to automatically disable did nothing more than create the condition that made Plaintiffs' injuries possible.  Because the circumstances here are not 'such that reasonable jurors would identify [the iPhone or Apple's conduct] as being actually responsible for the ultimate harm' to Plaintiffs, the iPhone and Apple's conduct are too remotely connected with Plaintiffs'

21

injuries to constitute their legal cause." (*Meador v. Apple, Inc.* (E.D.Tex., Aug. 16, 2016, No. 6:15-CV-715) 2016 WL 7665863, *4.)[15]

Disputing this analysis, the Modisettes assert that their "allegations are more than sufficient for a reasonable person to consider Apple a cause of the injury," and argue that the trial court's determination that the connection between Apple's conduct and their injuries was too " 'attenuated' " to state a cause of action "disregard[ed] the principles of comparative fault and usurp[ed] the jury's role in determining causation and comparative liability." We disagree that a reasonable person would consider Apple a cause of the accident here (see, e.g., *Durkee*, *supra*, 765 F.Supp.2d at p. 750), and the Modisettes do not point us to a single case involving similar facts suggesting otherwise. Moreover, while we acknowledge that but-for causation has been sufficiently alleged, the scope of Apple's liability is question of law. (*Mosley*, *supra*, 26 Cal.2d at p. 222 (conc. opn. of Traynor, J.).) That juries determine comparative liability in cases involving more than one tortfeasor does not foreclose this court's role in deciding whether it is just to hold a defendant liable for an injury in the first instance. (See *State Hosp.*, *supra*, 61 Cal.4th at p. 353; *PPG Industries*, *supra*, 20 Cal.4th at pp. 315-316; 6 Witkin, Summary of Cal. Law, *supra*, § 1331.)

The Modisettes also contend that product misuse "is an affirmative defense for which Apple bears the burden of proof." Although we agree that product misuse is an affirmative defense, it bears on whether a third party's misuse of a product was the "superseding cause of injury that absolves a tortfeasor of his or her own wrongful conduct [because] the misuse was so highly extraordinary as to be unforeseeable."

---

[15] Our proximate causation analysis echoes our consideration of the closeness of the connection between Apple's conduct and the Modisettes' harm in the duty of care determination because causation and duty are interrelated. (See *Kumaraperu*, *supra*, 237 Cal.App.4th at p. 69; *Bryant v. Glastetter* (1995) 32 Cal.App.4th 770, 781 & fn. 2; *Schrimscher v. Bryson* (1976) 58 Cal.App.3d 660, 664.)

(*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1308.) We do not conclude here that Wilhelm's use of the iPhone while driving was unforeseeable. Rather, we determine that the gap between Apple's design of the iPhone and the Modisettes' injuries is too great for the tort system to hold Apple responsible. (See *State Hospitals*, *supra*, 61 Cal.4th at pp. 355-357.)

D. *Leave to Amend*

When a trial court sustains a demurrer without leave to amend, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081, internal citations omitted.) The "order sustaining a demurrer without leave to amend is reviewable for abuse of discretion 'even though no request to amend [the] pleading was made.' (Code Civ. Proc., § 472c, subd. (a).)"[16] (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 667-668.)

The Modisettes argue that "Apple's recent implementation of its 'Do Not Disturb While Driving' technology" on iPhones further establishes "a causative relationship between [their] harm, Apple's conduct, and the alleged defects in Apple's iPhone [6 Plus]," and that they should be allowed to amend their complaint to allege facts related to that recent implementation. According to the Modisettes, the "Do Not Disturb While Driving" feature allows iPhone users "to limit the capability of drivers to text or receive

---

[16] The Modisettes requested general leave to amend in their opposition to Apple's demurrer.

23

FaceTime requests."[17]  The Modisettes ask us to take judicial notice of this recent design change to the iPhone, which occurred "in or around June 2017."

This court may take judicial notice of any matter specified in Evidence Code section 452, including "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, §§ 452, subd. (h), 459.)  In addition, on review of a demurrer, this court "may consider other relevant matters of which the trial court could have taken judicial notice and we may treat such matters as having been pleaded." (*Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 538.)

We do not agree that an amendment to the complaint alleging that Apple recently implemented "Do Not Disturb While Driving" technology in iPhones gives rise to a reasonable possibility that the Modisettes can establish either a duty of care or proximate cause.  The Modisettes alleged in the first amended complaint that Apple had the technology to automatically prevent drivers from utilizing FaceTime while driving when it manufactured the iPhone 6 Plus, an allegation that we have accepted as true.  (See *Moore*, *supra*, 51 Cal.3d at p. 125.)  The implementation of similar technology does not render the connection between Apple's conduct and the Modisettes' injuries less remote, nor does it alleviate any of the policy concerns addressed above.  Therefore, we decline to take judicial notice of the recent design change because it is not relevant to our determination.  (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)  We conclude that the trial did not abuse its discretion when it sustained the demurrer without leave to amend.

---

[17] According to the Apple support pamphlet attached as an exhibit to the request for judicial notice, the technology, when activated by an iPhone user, prevents certain notifications from being "delivered" while the user is driving so that the phone "stays silent and the screen stays dark."

## III. DISPOSITION

The judgment is affirmed.  Apple is entitled to costs on appeal.

_____
DANNER, J.

WE CONCUR:


_____
GREENWOOD, P.J.




_____
GROVER, J.




*Modisette, et al. v. Apple, Inc.*
**H044811**

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No. 16CV304364 |
| Trial Judge: | Hon. Theodore C. Zayner |
| Counsel for Plaintiffs/Appellants Bethany Modisette, James Modisette and Isabella Modisette | Simon Greenstone Panatier |
| | Brian Patrick Barrow |
| | Nectaria Belantis |
| | |
| | Love Law Firm |
| | Gregory P. Love |
| Counsel for Defendant/Respondent Apple, Inc. | Gibson, Dunn, & Crutcher |
| | Theodore J. Boutrous |
| | Christopher Chorba |
| | Jessica R. Culpepper |
| | |
| | Findlay Craft |
| | Eric H. Findlay |
| | Debby Gunter |

**H044811**
*Modisette et al. v. Apple, Inc.*